## FASULO v. UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 251.   Argued October 13, 14, 1926.—Decided November 29, 1926.

A scheme for obtaining money, by means of intimidation through threats of murder and bodily harm, is not a " scheme to defraud," within the meaning of Crim. Code § 215, (Rev. Stats. § 5480,) punishing the use of the mails for the purpose of executing any " scheme or artifice to defraud," etc.   P. 625.

7 F. (2d) 961, reversed.

CERTIORARI (269 U. S. 551) to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court sentencing Fasulo and others upon their conviction of a conspiracy to violate § 215 of the Criminal Code.

*Mr. John O'Gara,* with whom *Mr. Benjamin L. McKinley* was on the brief, for petitioner.

*Naponiello* v. *United States,* 291 Fed. 1008, should be followed rather than *Horman* v. *United States,* 116 Fed. 350; because by § 215 of the Criminal Code the statute has been vitally changed since the decision in the *Horman* case, by adding the words, " or for obtaining money or property by means of false or fraudulent pretenses, representations or promises."

The genesis of § 215 of the Criminal Code and of § 5480 of the Rev. Stats., shows that they were intended to cover schemes to obtain money or other property by deception merely, and not to cover schemes to extort by threats of violence, real or pretended. See and cf. Act of June 8, 1872, c. 35, 17 Stat. 283, §§ 149, 300, 301; 17 Stat. c. 335, p. 283, which became §§ 3894, 4041, and 5480, Rev. Stats. The Act of June 8, 1872, was in large part an adoption by Congress of the work of a Commission appointed " to revise, simplify and consolidate the laws of the United States." Act of June 27, 1866, c. 140, 14 Stat. 74. The Commission published in 1869 a so-called Postal Code. The Postmaster General appointed a committee of post office officials " to examine and report " upon said Postal Code. On March 30, 1870, this committee submitted their report, of which a copy is now on file in the Congressional Library.

No statute has been found which punished a real threat and at the same time excused a pretended threat; but on the other hand, no statute has been found which made it criminal to make a pretended threat and treated a real threat as constituting no offense. It is certain that Con-

gress did not mean to punish real threats in enacting §§ 149, 300, and 301 of the Act of June 8, 1872; it is inconceivable that Congress meant by them to punish pretended threats. Congress evidently meant to punish wrongs in which deception was of the very essence, not wrongs such as pretended threats in which deception was an unimportant and insignificant circumstance merely. It would seem that this construction of the law agrees exactly with the interpretation given to § 5480 in *Durland* v. *United States,* 161 U. S. 306. It was evidently for the purpose of avoiding misconstruction and of restoring the law actually, but also apparently, to its original condition as intended by the Act of June 8, 1872, that the revising Commission, in drafting § 215 of the Criminal Code, inserted after the words " scheme or artifice to defraud," the very words (adding only, " or property," and leaving out, " through the mails "), which occur in § 300 of the Act of June 8, 1872, namely, " for obtaining money or property by means of false or fraudulent pretenses, representations or promises."

Extortion of the species and character here involved is essentially and characteristically a crime of violence, and is put by law writers in the same category as highway robbery. The will of the victim in both offenses is coerced, by violence, or by threats which are in reality a form of violence. Fraud, on the other hand, is essentially and characteristically the crime of craft. It is by nature sly, underhand and violence-shunning. The decisions and the treatises of law writers are replete with expressions which recognize and imply that fraud is the very opposite of violence; as for example: " The property was obtained by fraud, not by force." " Consent was obtained by fraud, not by violence." One can take up almost any text took on contracts or on wills and find that duress and fraud are differentiated. *Hammerschmidt* v. *United States,* 265 U. S. 182.

The offences are as essentially different as a battery is from a libelous article. Battery, and libel, and embezzlement· and theft injure, but in different ways, and are different crimes. Viewing extortion and fraud from the essential difference as to consent, they differ more essentially than theft and embezzlement. In extortion the victim gives no real consent to parting with his property; his consent is like that of the victim who turns over his watch to the highwayman at the point of a pistol. In fraud, to the very contrary, the victim genuinely and freely consents to part with his property.

The mails have been used to further schemes to murder and to commit a multitude of other local crimes. If such instances of misuse of the mails have not moved Congress to intrude in state affairs and to legislate against those offenses, why should it be supposed or presumed that Congress has been aroused and has legislated as to offenses of the fraud of circumvention which use the mails less and are every bit as much local crimes?

It is quite another matter respecting schemes which almost necessarily employ the public agency of the mails to reach and victimize the credulous and unsuspecting, beyond the confines of the State of the culprits. The States are unable adequately to cope with them. *United States* v. *Clark,* 121 Fed. 190.

Contemporary construction shows most satisfactorily what was the mischief in the mind of Congress when it enacted these sections. *United States* v. *Owens,* 17 Fed. 72; *United States* v. *Mitchell,* 36 Fed. 492; *United States* v. *Fay,* 83 Fed. 839; *United States* v. *Wallen,* 29 Fed. 72. Cf. *Harrison* v. *United States,* 200 Fed. 662.

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell* and *Mr. William D. Whitney,* Special Assistant to the Attorney General, were on the brief, for the United States.

The use of the mails for the purpose of securing money by means of threats constitutes an offense indictable under § 215 of the Criminal Code. The statute was intended, and has been properly construed by the courts, to cover the evil of obtaining money or property of another by dishonest means. *Weeber* v. *United States,* 62 Fed. 740; *Horman* v. *United States,* 116 Fed. 350. Petitioner suggests that the *Horman* case is not in point because of the addition to Rev. Stats. § 5480, made in 1909. The answer appears to be that this Court has since expressly recognized the authority of the *Horman* case. *Hammerschmidt* v. *United States,* 265 U. S. 182. This makes clear the opinion of the Court, in accord with the case of *Durland* v. *United States,* 161 U. S. 306, that the word "defraud" is directed to the case of "wronging one in his property rights by dishonest methods or schemes." Obviously it does "not extend to theft by violence," but it does extend to blackmail. The method of deprivation in the one case is physical coercion, in the other mental coercion based on the use of the mails.

It has been more than once recognized that the word "defraud" in a federal statute carries a broader meaning than at common law. *Durland* v. *United States, supra; United States* v. *Stever,* 222 U. S. 167. Having passed the limits of the common law definition, we find that the next circle of classification embraces all dishonest methods of deprivation, "the gist of which" is the use of the mails. The case of blackmail is no doubt at "the verge," but it is not without the circle of construction justified by the intent of Congress and the common meaning of words. *Naponiello* v. *United States,* 291 Fed. 1008, is in conflict with the weight of authority.

In determining the meaning which Congress intended should be given to § 215 it is a significant fact that the phrase used in § 5480 Rev. Stats., "any scheme or artifice to defraud," was embodied in § 215 of the Criminal Code.

It is further significant that all of the above-cited cases turned upon the meaning of that phrase in § 5480. Three of the cases specifically held that the sending of letters through the mails for the purpose of securing a pecuniary advantage by means of threats fell within the meaning of the words " any scheme or artifice to defraud." It was in the light of these decisions that § 215 was adopted.

The reasoning in the *Horman* case is sounder than that in the *Naponiello* case, and has behind it more of practical common sense and judgment. Obtaining money by threats of injury is defrauding according to common understanding. It is incredible that Congress has intended all these years to prohibit the use of the mails to defraud by trick or false pretenses but to leave the mails open to use by blackmailers or extortionists. The statute was construed in 1902 by the Circuit Court of Appeals in the *Horman* case to cover a case of obtaining money by threats of injury to character or reputation. There is no distinction between that and the case of threat of injury to person or property. Certiorari was denied by this Court. For a quarter of a century that decision stood unquestioned. Congress has acquiesced in that construction of the law. Its failure to pass bills introduced to prohibit the use of the mails for " blackhand " letters has no doubt been due to the belief that the subject was covered by existing statutes as construed by the courts.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The petitioner, indicted with others in the Northern District of California, was convicted of conspiracy to violate § 215 of the Criminal Code. 35 Stat. 1088, 1130. The judgment was affirmed, 7 F. (2d) 961. And see *Lupipparu v. United States*, 5 F. (2d) 504.

The question for decision is whether the use of the mails for the purpose of obtaining money by means of threats of murder or bodily harm is a scheme to defraud

within the meaning of that section. Petitioner contends that sending threatening letters for that purpose involves coercion and not fraud. The government insists that in a broad sense threats constitute fraud, and that the section covers the obtaining of money or property of another by dishonest means. The words of the statute relied on follow: " Whoever, having devised . . . any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . shall, for the purpose of executing such scheme . . . place, or cause to be placed, any letter . . . in any post-office, . . . to be sent or delivered . . . " shall be punished. Questions somewhat similar have been considered in the lower courts, but the issue here presented has never been decided by this court.

In *Weeber* v. *United States,* 62 Fed. 740, the defendant was convicted under the provision here in question, then a part of § 5480, Revised Statutes. The scheme to defraud alleged was this: One Kearney pretending to have a claim against Stephens placed it in defendant's hands for collection. An action was then pending in the federal court brought by the United States against Stephens. Defendant caused to be mailed a letter, purporting to be from the United States attorney to himself, in reference to furnishing testimony tending to show Stephens liable to the government, and then caused the letter to be seen by Stephens, intending that he should be frightened into paying the false claim in order to prevent disclosures to the United States attorney. The court held the indictment good and affirmed the conviction. But, in that case, there were involved trickery and deceit as well as threat. The contention that threats to injure do not constitute a scheme to defraud does not appear to have been made; at any rate, it was not discussed in the opinion.

In *Horman* v. *United States,* 116 Fed. 350, the Circuit Court of Appeals of the Sixth Circuit affirmed a conviction under § 5480. The defendant and others, pretending to have knowledge of crimes committed by Douglass and others, threatened to make them public unless given $7,000. The purpose of the conspiracy was to obtain money by means akin to, if not technically, blackmail and extortion. The court construed the section and said the words "to defraud" were not descriptive of the character of the artifice or scheme but rather of the wrongful purpose involved in devising it. And it held that (p. 352): "If the scheme or artifice in its necessary consequence is one which is calculated to injure another, to deprive him of his property wrongfully, then it is to defraud within the meaning of the statute."

On the basis of these cases the government argues that the statute embraces all dishonest methods of deprivation the gist of which is the use of the mails.

But in *Hammerschmidt* v. *United States,* 265 U. S. 182, we held that § 37 of the Criminal Code denouncing conspiracy "to defraud the United States in any manner or for any purpose" did not condemn a conspiracy to defeat the selective draft by inducing persons to refuse to register. It is there said that the decision in *Horman* v. *United States* went to the verge; that since that decision § 5480 had been amended to make its scope clearer; and that its construction in that case could not be used as authority to include within the legal definition of a conspiracy to defraud the United States a mere open defiance of the governmental purpose to enforce a law. And in the discussion of the words "to defraud" it is said that they primarily mean to cheat; that they usually signify the deprivation of something of value, by trick, deceit, chicane or overreaching, and that they do not extend to theft by violence, or to robbery or burglary.

The reference in the opinion to "means that are dishonest" and "dishonest methods or schemes" does not support the government's construction of the phrase. The contrasts there emphasized and the context indicate the contrary.

And in *Naponiello* v. *United States,* 291 Fed. 1008, the Circuit Court of Appeals of the Seventh Circuit—a few days after the decision of the *Hammerschmidt* case but without reference to it—held that the use of the mails to send a letter to extort money by threats is not to promote a scheme to defraud within § 215; and said the words there used show unmistakably that the victim's money must be taken from him by deceit.

Undoubtedly the obtaining of money by threats to injure or kill is more reprehensible than cheat, trick, or false pretenses; but that is not enough to require the court to hold that a scheme based on such threats is one to defraud within § 215. While, for the ascertainment of the true meaning and intention of the words relied on; regard is to be had to the evils that called forth the enactment, and to the rule that a strict construction of penal statutes does not require the words to be so narrowed as to exclude cases that fairly may be said to be covered by them, it is not permissible for the court to search for an intention that the words themselves do not suggest. *United States* v. *Wiltberger,* 5 Wheat. 76, 95.

If threats to kill or injure unless money is forthcoming do not constitute a scheme to defraud within the statute, there is none in this case. The only means employed by petitioner and his co-conspirators to obtain the money demanded was the coercion of fear. A comprehensive definition of "scheme or artifice to defraud" need not be undertaken. The phrase is a broad one and extends to a great variety of transactions. But broad as are the words "to defraud," they do not include threat and coercion through fear or force. The rule laid down in the *Horman*

case includes every scheme that in its necessary consequences is calculated to injure another or to deprive him of his property wrongfully. That statement goes beyond the meaning that justly may be attributed to the language used. The purpose of the conspirators was to compel action in accordance with their demand. The attempt was by intimidation and not by anything in the nature of deceit or fraud as known to the law .or as generally understood. The words of the Act suggest no intention to include the obtaining of money by threats. There are no constructive offenses; and, before one can be punished, it must be shown that his case is plainly within the statute. *United States* v. *Lacher,* 134 U. S. 624, 628. In *United States* v. *Chase,* 135 U. S. 255, the indictment was under § 1 of the Act of July 12, 1876, c. 186, 19 Stat. 90, declaring " every . . . book, pamphlet, picture, paper, writing, print or other publication of an indecent character " to be unmailable, and making their deposit in the mails an offense. The question was whether to send an obscene letter by mail violated that section. The court held that the letter was not a writing within the meaning of the statute. It said (p. 261): " We recognize the value of the rule of construing statutes with reference to the evil they were designed to suppress as an important aid in ascertaining the meaning of language in them which is ambiguous and equally susceptible of conflicting constructions. But this court has repeatedly held that this rule does not apply to instances which are not embraced in the language employed in the statute, or implied from a fair interpretation of its context, even though they may involve the same mischief which the statute was designed to suppress."

The threats in question cannot fairly be held to constitute a scheme to defraud.

*Judgment reversed.*