## LESSELYOUNG v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
April 2, 1927.

### No. 7414.

**1. Post office ⬅48(4)—Indictment charging collection agency with using mails in attempt to collect fictitious indebtedness held not defective because restricted to ignorant persons (Criminal Code, § 215 [Comp. St. § 10385]).**

Indictment under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in furtherance of a scheme to defraud by misrepresenting and deceiving ignorant persons in believing that they were indebted to collection agency for services alleged to have been rendered *held* not defective because restricting class of persons to be defrauded to ignorant persons; being sufficient if purpose was to defraud any person or persons whomsoever.

**2. Post office ⬅48(4)—Indictment charging collection agency used mails in attempt to collect fictitious indebtedness held not demurrable, in that misrepresentations charged were of law (Criminal Code, § 215 [Comp. St. § 10385]).**

Indictment under Criminal Code, § 215 (Comp. St. § 10385), for using mails in furtherance of scheme to defraud by means of misrepresentations, and deceit, inducing divers ignorant persons to believe they were indebted to collection agency for services alleged to have been rendered by it, *held* not subject to demurrer because misrepresentations charged were of law and not of fact, since deception under certain circumstances may be practiced on the unsophisticated and unwary, even though representations made involved law as well as fact.

**3. Criminal law ⬅202(1)—Acquittal under indictment charging collection agency used mails in collecting fictitious indebtedness, involving matters unrelated to subsequent prosecution held not bar thereto (Criminal Code, § 215 [Comp. St. § 10385]).**

Acquittal under former indictment charging defendant with having devised fraudulent scheme involving use of mails which, both as to addressees and subject-matter, was unrelated to subsequent indictment under Criminal Code, § 215 (Comp. St. § 10385), for fraudulently using mails in deceiving certain persons relative to indebtedness to collection agency for services alleged to have been rendered, *held* not to involve former jeopardy so as to constitute a bar to such subsequent prosecution.

In Error to the District Court of the United States for the District of Minnesota; John B. Sanborn, Judge.

Simon P. Lesselyoung was convicted for use of the mails in furtherance of a scheme to defraud, and he brings error. Affirmed.

J. T. Sullivan, of Waterloo, Iowa (W. I. Norton, of Minneapolis, Minn., and Jeffery G. Sullivan, of Waterloo, Iowa, on the brief), for plaintiff in error.

Frederick S. Winston, Sp. Asst. U. S. Atty., of St. Paul, Minn. (Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

VAN VALKENBURGH, Circuit Judge. This is a prosecution for use of the mails in furtherance of a scheme and artifice to defraud in violation of section 215 of the Criminal Code (Comp. St. § 10385). The indictment originally contained thirteen counts; at the trial the last six counts were dismissed

by the government; the jury returned a verdict of guilty upon each of the remaining seven counts.

The scheme charged in the indictment is that plaintiff in error did organize, and cause to be organized, a collection agency known as the Creditors' Protective Bureau, of which he was the owner, or part owner, and manager, which said collection agency was to do business in the city of Minneapolis, Minn., and elsewhere, and to solicit accounts for collection; that said business concern should, by means of misrepresentations and false statements, induce in the minds of divers ignorant persons the false and mistaken belief that they were indebted to said business concern for services alleged to have been rendered them by it; that having, by misrepresentation and deceit, brought about such mistaken and erroneous belief in the minds of such persons, said bureau should collect from them the amounts of such false and fictitious indebtedness, thereby depriving such persons of their money and property, without equivalent, for the use and benefit of said company and of the plaintiff in error as manager and one of the owners thereof.

This state of mind on the part of those intended thus to be defrauded was brought about by numerous form letters, circulars, statements, innuendos, and suggestions. Each statement of account sent to the assumed debtor from whom collection was to be made contained, in addition to the account proper, an "office and collection labor charge"—at first usually in the sum of $3.75. The total amount, including this item, was then stated to be past due and payable. The parties were admonished that, upon failure to pay promptly, additional expense would accrue and be charged to the debtor. These additional expenses involved charges for letters thereafter to be written, clerical and stenographic services, together with per diem charges of so-called road agents. From the record it appears that such charges amounted in many cases to exorbitant sums. By the literature it was impressed upon the unfortunate debtors, by carefully worded innuendo, that these were recognized legal costs and charges susceptible of collection by legal process; that failure to pay promptly would therefore result in great financial loss and disadvantage. In some cases accounts were thus presented in which payment of the amount legally due was made to the original creditor; nevertheless, demands for these increasing fictitious charges persisted. In other cases accounts were presented which had not been placed in the hands of this so-called bureau for collection.

As a result of this cunningly devised scheme, many victims, ignorant of the fixed legal charges permitted under established collection and court procedure, paid to plaintiff in error and his company large sums of money and gave their promissory notes for other large amounts, whereby, at the time this prosecution was brought, the bureau was taking in an average of $7,000 per month in cash, and had accumulated a very large amount in money and bills receivable. The record, which is extended, abounds with evidence, documentary and otherwise, of the existence of the scheme charged and of the use of the mails in furtherance thereof. A more detailed statement is deemed unnecessary.

[1] At the outset plaintiff in error interposed a demurrer upon the ground that the indictment failed to charge an offense; in support thereof it was urged that the pleading was faulty because it restricted the class of persons to be defrauded to ignorant persons. This point is obviously without merit. It is sufficient if the purpose was to defraud any person or persons whomsoever. The scheme was leveled against those most vulnerable to deception and naturally was less likely to succeed with people of highest intelligence or broadest experience.

[2] It is next insisted that the misrepresentations charged were of law and not of fact, and therefore not within the statute. The maxim, that ignorance of the law does not excuse, has no application here. It was called into being as an essential aid to law enforcement. So the general rule that a fraudulent representation, to be available must be of fact and not of law, is subject to exception. This is especially true in a case of this nature. Deception under certain circumstances may be practiced upon the unsophisticated and unwary, even though the representation made involves law as well as fact. Particularly is this true when it is an insidious one, consisting of a series of plausible statements, calculated by their insistence to break down the feeble judgment of those to whom they are made, and gradually to inspire belief and acceptance. The demurrer to the indictment was therefore properly overruled.

[3] Plaintiff in error next interposed a plea in bar and motion to quash upon the ground of former jeopardy. In support of this claim there was introduced an indictment, returned October 5, 1920, in the district of Minnesota, charging this same defendant with having devised a fraudulent scheme, and the court record disclosing a trial and acquittal through a directed verdict. With respect to this plea it is sufficient to say that

the scheme charged in that indictment differed wholly in its essential features, was aimed at an entirely different class of persons, and involved a use of the mails both as to addresses and subject-matter in no wise related to that employed in the case at bar. It requires no citation of authority to support the conclusion that the claim of former jeopardy was not sustained, and the court below was clearly right in overruling both plea in bar and motion to quash.

At the close of all the evidence, plaintiff in error moved for a directed verdict on the ground that the evidence failed to sustain the charge. In our judgment the record amply supports the verdict.

The suggestion was made, though not with great insistence, that the scheme charged disclosed, at most, nothing more than a threat to sue and immediately to expose the debtor to inconvenience, embarrassment, and impairment of reputation. Reliance is placed upon the case of Fasulo v. United States (decided by the Supreme Court November 29, 1926) 47 S. Ct. 200, 71 L. Ed. ——. That case, however, dealt with the use of the mails for the purpose of obtaining money by means of threats of murder or bodily harm involving no element of deceit. Weeber v. United States (C. C.) 62 F. 740, was considered. In that case the scheme is thus stated in the opinion:

"Stephens was not in fact indebted to Kearney. Kearney pretended to have a claim against Stephens, and placed it in defendant's hands for collection. A suit was pending in the federal court by the United States against Stephens et al., for the recovery of moneys alleged to be due for lumber taken off government lands. The defendant caused to be passed through the mails a letter purporting to be from the United States district attorney to himself, in reference to the furnishing of testimony tending to show Stephens liable to the government, and then caused the letter thus passing through the post office to be sent, by one apparently a stranger, to Stephens, the intention and expectation being that thereby Stephens would be frightened—blackmailed—into paying the claim of Kearney, in defendant's hands for collection, in order to prevent any disclosures by defendant to the United States district attorney."

Weeber, the defendant, was convicted in the District Court for the District of Colorado. Upon appeal to the Circuit Court, the hearing was before Brewer, Circuit Justice, and Caldwell and Sanborn, Circuit Judges. The opinion was by Mr. Justice Brewer. In

distinguishing this case from the one before him Mr. Justice Butler, in Fasulo v. United States, supra, said: "The court held the indictment good and affirmed the conviction. But in that case there were involved trickery and deceit as well as threat." Here trickery and deceit were the prominent features of the scheme.

Other errors assigned have been considered; they are so obviously without merit that they do not demand discussion here. The indictment charged an offense, and the evidence fully sustained the charge.

The judgment accordingly is affirmed.