### UNITED STATES v. ELLER et al.

#### No. 3937.

United States District Court
M. D. North Carolina, Wilkesboro Division.
July 27, 1953.

Bryce R. Holt, U. S. Atty., Greensboro, N. C., for plaintiff.

Kyle Hayes, North Wilkesboro, N. C., for defendant.

HAYES, District Judge.

The defendants have moved to dismiss the indictment and to dismiss the prosecu-

tion for the reason that the indictment alleges the crimes to have been committed since April 1, 1951 under Regulation 17 effective on that date, promulgated by the Commissioner of Internal Revenue and approved by the Acting Secretary of the Treasury and for the specific reason that no demand, in writing, was made by the Commissioner or his agent on the defendants to make a return. Motion granted.

Regulation 17, 1945 Edition (26 C.F.R. Part 173; 10 F.R. 8734) and all amendments and modifications thereof through December 31, 1950, were superseded by Regulation 17, adopted by the Commissioner and approved by the Secretary of the Treasury, to be effective April 1, 1951. Paragraph 3 is unambiguous; it needs no construction to ascertain what is meant. It is to be the regulation in force for the events occurring after April 1, 1951. It declares its purpose. "These regulations shall, on and after April 1, 1951, supersede Regulation 17 (26 C.F.R., Part 173; 10 F.R.–8734)". Supersede has an established legal meaning. It means to set aside; annul, displace, to stand as a substitute for. City of Los Angeles v. Gurdane, 9 Cir., 59 F.2d 161, 163. Speaking of laws enacted by Congress where it had not exercised its power previously, the Supreme Court said the law enacted by Congress superseded the State law on the subject. "And now that Congress has acted, the laws of the states, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is." Second Employers' Liability Cases [Mondou v. New York, New Haven, & Hartford R. Co.], 223 U.S. 1, 32 S.Ct. 169, 177, 56 L.Ed. 327; Seaboard Air Line Ry. v. Horton, 233 U.S. 492, 501, 34 S.Ct. 635, 58 L.Ed. 1062; Chicago, M. & St. P. R. Co. v. Coogan, 271 U. S. 472, 474, 46 S.Ct. 564, 70 L.Ed. 1041.

Section 2811 of the Internal Revenue Code, 26 U.S.C. § 2811, authorizes the Commissioner, with the approval of the Secretary of the Treasury to promulgate rules and regulations with respect to returns to be made by those who sell sugar and other substances that may be diverted into the illicit distillation of spirits. Pursuant to this authority, the existing Regulation 17 was promulgated and became effective April 1, 1951 and Section 173.15 defines those who are to make returns as follows: "Every person in the United States who disposes of any substance, as defined in Section 173.11 shall, *when required in writing* by the Commissioner * * * and until notified to the contrary in *writing* by such an officer * * * return in writing correct returns" and specifies the details as to each sale, quantity, substance, date and purchaser. It is not contemplated that all merchants who sell sugar or feed stuff will connive with illicit distillers and supply them with essential materials. The enforcement officers ordinarily discover the names of those who do supply the trade and then serve a written demand on the merchant to make returns. It is seldom, if ever, that a retail merchant would have to make returns nor wholesale merchants of quantities less than 200 pounds.

The written demand, therefore, is the essential requirement before a return is required and it is indispensable as a basis to support an indictment for failure to make a return. It sets in motion the mechanics necessary before a crime thereunder can be committed.

The indictment here contains 11 counts for failure to report sales of sugar, all on dates after April 1, 1951. On the motion to quash the indictment, the United States Attorney admitted that no demand in writing had been made by the Commissioner or his agent under the present regulation. However, it is contended by him that a written demand was served on the defendants in 1947 under the old Regulation 17 which had not been revoked by the Commissioner and that this written demand is sufficient.

It is true that the present Regulation 17 is a repetition of the substance of old Regulation 17 and its amendments. However, Regulation 17 is clearly stated and shows beyond controversy that it is complete in itself and is to operate on and after April 1, 1951, thereby superseding in its entirety old Regulation 17 and its amendments. This is made crystal clear by its retaining the old Regulation as to violations occurring before April 1, 1951, as follows:

"These regulations shall not affect or limit any act done or liability incurred under any regulations superseded hereby, or any suit, action, or proceeding had or commenced in any civil, administrative, or criminal cause and proceeding prior to the effective date of these regulations, nor shall these regulations release, acquit, affect, or limit any offense committed in violation of previously existing regulations, or any penalty, liability or forfeiture incurred prior to such date." If it had been intended to retain the old and new Regulations together there would have been no reason for the inclusion of the clause quoted above nor the provision that the new Regulation shall, after April 1, 1951, supersede the old Regulation. Moreover, if the Commissioner desired to dispense with the necessity of a written demand under the new Regulation, he should have inserted a proviso that no such demand shall be necessary where one is already outstanding.

It is helpful to note the detailed and almost redundant items reserved under the old Regulations and it is more significant why the written demand already served is not mentioned. If the old Regulation is superseded by the new, it necessarily takes the place of, a substitute for, the old. The new is in force after April 1, 1951; the old becomes obsolete on the effective date of the new, subject to the specific rights reserved.

We are not concerned here with ambiguity. The language is plain. It is not permissible, in the construction of penal statutes, to search for an intention that the words themselves do not suggest. It is appropriate to cite from Fasulo v. United, States, 272 U.S. 620, 629, 47 S.Ct. 200, 202, 71 L.Ed. 443: "We recognize the value of the rule of construing statutes with reference to the evil they were designed to suppress as an important aid in ascertaining the meaning of language in them which is ambiguous and equally susceptible of conflicting constructions. But this court has repeatedly held that this rule does not apply to instances which are not embraced in the language employed in the statute, or implied from a fair interpretation of its context, even though they may involve the same mischief which the statute was designed to suppress." Courts are reluctant to extend the meaning of criminal statutes beyond the reasonable meaning of the language used in the statutes. Prussian v. United States, 282 U.S. 675, 677, 51 S.Ct. 223, 75 L.Ed. 610. In the multitudinous statutes and regulations of the Internal Revenue Law, "every citizen is entitled to fair warning of the traps which the criminal law lays." U. S. v. Carroll, 345 U.S. 457, 460, 73 S.Ct. 757, 759.

It is therefore the opinion of the court that the letter served in 1947, under the old Regulation, terminated with the Regulation and became ineffective, on and after April 1, 1951; a new written demand was required after April 1, 1951 before an offense could be committed under the present regulation.