841 F.2d 1127
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
S. Robert DAVIS, Defendant-Appellant.
 No. 86-4076.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1988.
 
 Before ENGEL, KRUPANSKY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, who had business dealings with a corrupt local government official, was found guilty of mail fraud. The defendant contends on appeal that he was convicted on the basis of a supposed scheme to deprive the citizenry of its "intangible rights" to honest and faithful services from the official. After this case was briefed, the United States Supreme Court held in McNally v. United States, 483 U.S. ----, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), that one may not be convicted of mail fraud under a pure "intangible rights" theory. We shall reverse the defendant's conviction on that basis.
 
 
 2
 The defendant, S. Robert Davis, was indicted in June 1986 for a scheme allegedly begun in March 1981 and continued through January 2, 1982. The indictment charged that in violation of the mail fraud statute, 18 U.S.C. Sec. 1341, "S. ROBERT DAVIS, the defendant, devised and intended to devise a scheme or artifice to defraud the citizens of the City of Upper Arlington, Ohio, of their rights to honest and faithful services from their public officials, and, in furtherance of the scheme, did use or cause the use of the United States mails." The alleged scheme involved a waterline constructed by the defendant at his own expense in and about a subdivision known as Squirrel Bend, located in the City of Upper Arlington, Ohio. Under a local ordinance, the defendant could certify the costs of construction to the city, and, based upon the cost certification, the city would then collect and remit to the defendant a tap-in charge from residents wishing to tap into the waterline.
 
 
 3
 The indictment charged that Harold W. Hyrne, the city manager at the time, agreed not to question costs certified by the defendant as long as such costs approximated those previously estimated by the city; that Mr. Hyrne used an inflated cost certification submitted by the defendant to calculate a tap-in charge to a property owner; and that Mr. Hyrne and the defendant agreed that in exchange for the defendant's later giving Mr. Hyrne an opportunity to purchase some common stock at a discount, Mr. Hyrne would not collect certain inspection fees from the defendant. The indictment charged four counts of mail fraud based on four mailings made in the process of collecting and transmitting the tap-in charge.
 
 
 4
 The case was tried to a jury under the "intangible rights" theory. Under this theory, as the jury was told during the prosecutor's opening statement, "[y]ou don't have to be concerned about depriving a person of money. A person or a city or citizens of a municipal corporation in Ohio can be deprived of their rights to honest and faithful government." Under this theory, deprivation of money or property of the citizens is not necessary for conviction. The court so charged the jury:
 
 
 5
 "The first element the Government must prove beyond a reasonable doubt is the existence of a scheme or artifice to defraud. A scheme or artifice to defraud means some plan or course of action intended to deceive others and to deprive them of something of value. A scheme to defraud under the mail fraud statute can include the knowing and willful defrauding of the citizens of a city of their right to have the affairs of the city conducted in a fair, honest and faithful manner, free from corruption or self-dealing, between its elected or appointed officials and others doing business with the city. Although it is not necessary that the Government prove all of the details charged in the portion of the indictment describing the scheme to defraud, it is necessary that the Government prove beyond a reasonable doubt one or more acts sufficient to establish the existence of the scheme to defraud."
 
 
 6
 The jury was thus permitted to find the defendant guilty of mail fraud, under the intangible rights theory, without finding that anyone was wrongly deprived of money or property.
 
 
 7
 In McNally v. United States, 483 U.S. ----, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the Supreme Court held that the mail fraud statute is limited to protection of money or property rights and that jury instructions that fail to require a finding that anyone has been defrauded of money or property are infirm, under the statute. Cf. United States v. Murphy, --- F.2d ----, (6th Cir.1988).
 
 
 8
 The indictment in the case at bar does not properly allege a violation of the mail fraud statute. In its initial paragraph the indictment defines the scheme to defraud as one directed at the "rights [of citizens of the Upper Arlington] to honest and faithful services from their public officials...." Although in later paragraphs the indictment avers facts that may have involved a deprivation of property or money, nowhere is there an averment that the purpose or result of the scheme was to obtain property or money for the defendant. The mail fraud statute does not require that a scheme to defraud be successful, but only that the scheme existed and a mailing was made in furtherance of it; the allegations involving the assessment and payment of money were therefore not essential to the crime as charged. We shall not strain to construe this defective indictment as implicitly charging that the purpose of the scheme was to deprive someone of money, as opposed to depriving the citizens of Upper Arlington of their "rights to honest and faithful services from their public officials...." See United States v. Heller, 579 F.2d 990, 999 (6th Cir.1978).
 
 
 9
 "In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating. If the acts alleged in the indictment did not constitute a violation of the law that the defendant has been charged with violating, we must reverse any subsequent conviction based on that indictment. See McNally v. United States, --- U.S. ----, ----, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (quoting Fasulo v. United States, 272 U.S. 620, 629, 47 S.Ct. 200, 202, 71 L.Ed. 443 (1926))."
 
 
 10
 United States v. Gimbel, 830 F.2d 621, 624 (7th Cir.1987).
 
 
 11
 Here the jury could have found that there was no financial result from the false certification, and could still have concluded, under the indictment and under the court's charge, that a crime had been committed. In Gimbel the Court of Appeals for the Seventh Circuit rejected an argument that if the scheme had not been undertaken the government "might have" assessed tax deficiencies against the defendant; that court stated:
 
 
 12
 "[t]he relevant fact ... is that the jury was not required to find that the scheme resulted in the government being deprived of money or property."
 
 
 13
 Gimbel, 830 F.2d at 627 (footnote omitted). That analysis applies to the indictment in the instant case.
 
 
 14
 We REVERSE the defendant's conviction and REMAND the case to the district court with instructions to dismiss the indictment.