# NOS. 12-07-00045-CR
# 12-07-00046-CR
# 12-07-00047-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BILLY JACK WRIGHT,*<br>*APPELLANT* | § | *APPEALS FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

Billy Jack Wright appeals his convictions for three counts of harassment. In two issues, Appellant argues that the evidence is insufficient to support the verdicts. We reverse and render.

### BACKGROUND

Appellant had been friends with Anita and Jerrell Marsh. That friendly relationship ended sometime in the 1990s. The exact starting point and the contours of the enmity between the parties are not perfectly clear, but a rift between the families began around the time that Appellant won election to the school board, defeating Jerrell. The election was held in 1995, although Jerrell dates the schism to 1993 when Appellant had a falling out with a mutual friend. The parties never reconciled. Around the end of 2001, someone stabbed two of Appellant's horses, killing one. When asked who might have done it, Appellant told the police about his relationship with the Marshes, causing the police to interview them. Apparently their son Todd was identified as a suspect, but he

had an alibi and was not charged.

In early 2002, the Marshes began to receive letters and notes that they took to be threatening. The notes were vague, written in broken English, and speaking generally about the writer's assessment as to whether the Marshes, including their son Todd, would go to heaven when they died. The letters also contained suggestions, including that they should tithe, confess, and ask for forgiveness. Other letters suggested that Anita had sinned, that a heinous crime had been committed, that Jerrell should be baptized, and finally, that there was a law enforcement operation underway targeting their property and that this operation would net more "game thieves" than did a previous one. The letters included one with what appears to be a stick–style drawing of a horse and another addressed to the Marshes' son as Todd "Stick Horse" Marsh.

The Marshes reported these letters to the police. The police did an investigation, which included an analysis of the handwriting on the notes, and determined that Appellant had sent them. He was charged with three separate counts[1] of harassment, all misdemeanors. Appellant pleaded not guilty, and a jury found him guilty of all three counts. The appeal followed.

SUFFICIENCY OF THE EVIDENCE

In two issues, Appellant complains that the evidence is legally and factually insufficient to support the jury's verdict.

**Standards of Review**

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See **Jackson v. Virginia***, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); ***Ross v. State***, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); ***Willis v. State***, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also **Rollerson v. State***, 227 S.W.3d 718, 724 (Tex.

---

[1] We refer to the each of the three charges against Appellant as counts for ease of reference. He was charged by information in three separate cause numbers with the misdemeanor offense of harassment. Each charging information alleged a single victim. All three charges were tried in a single trial.

Crim. App. 2007).

While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires further review of the factual sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex. Crim. App. 1996). Factual sufficiency review differs from legal sufficiency review only slightly. *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). In a factual sufficiency review, we review the evidence without the light most favorable to the verdict and we are authorized, "albeit to a very limited degree," to disagree with the jury's resolution of contested factual issues. *See id.*; *Watson v. State*, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006). In a review of the factual sufficiency of the evidence, we will conclude that the evidence is insufficient only if the great weight and preponderance of the evidence contradicts the jury's verdict or the verdict is clearly wrong and manifestly unjust. *See Rollerson*, 227 S.W.3d at 724; *Watson*, 204 S.W.3d at 417.

Under either standard, our role is that of appellate review, and the fact finder is the principal judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Wooley v. State*, No. PD-0861-072008, Tex. Crim. App. LEXIS 762, at *1–*2 (Tex. Crim. App. June 25, 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Malik*, 953 S.W.2d at 240.

As authorized by the information, the State was required to prove that Appellant, with the intent to harass, annoy, alarm, torment, or embarrass another, threatened in writing, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of his family or household, or his property. TEX. PENAL CODE ANN. § 42.07(a)(2) (Vernon 2003).

**Analysis**

Appellant argues that the letters do not contain threats and that there is no evidence that he communicated with Todd Marsh by letter at all.

The State organized its accusations in such a way that each count alleged that a specific note or letter threatened a specific victim. The writing alleged to have threatened Todd Marsh reads as follows:

> Anita
> for this heinous Crime you and your son will never receive salvation from Jesus and
> you will suffer eternally untill [sic] you and he confess and ask for forgiveness.
> Jesus is watching You.
> /s/ Neighbor

To commit a crime, the person must threaten another in writing and there must be a "person receiving the threat." TEX. PENAL CODE ANN. § 42.07(a)(2). According to the evidence, Todd did not receive this letter. Todd never testified that he saw this letter, and it was not addressed to him. Another letter was addressed to him. That letter was offered into evidence, but the court did not admit it. Todd's mother testified that she received the other letter and that it scared her. She did not testify that she showed Todd the other letter. Todd identified yet another letter, this one a postcard, with a stick drawing on it that looked like a horse. It is not clear whether Todd had seen it before trial.

The State does not dispute that it had to prove Todd received the threat and argues it did so. The State's argument is not supported by the record. The State says Todd testified that he received several cards and letters. He did not so testify, and the citations to the record provided by the State in its otherwise well organized brief are to Jerrell's testimony. Furthermore, we disagree with the State that Jerrell's testimony that "[w]e received several [letters]" and ". . . that's when we started receiving the cards and the letters . . . ." is evidence that Todd received the letter alleged to be a threat against him. There is no context behind the use of the pronoun "we" to allow the conclusion that Jerrell was referring to all three of the Marshes as having seen this particular letter.

We have reviewed the entire record. Even in the light most favorable to the verdict, there is no evidence to allow a rational jury to conclude beyond a reasonable doubt that Todd was a person

4

who received a threat. Furthermore, the letter may contain a vague threat of "suffering" to Anita. But with respect to Todd, it says only that he "will never receive salvation from Jesus." This is not a threat by itself, and there is no contextual evidence that allows the inference that this is a threat to inflict bodily injury or commit a felony. Therefore, we conclude that the evidence is legally insufficient on this count.

The other two counts alleged that Appellant made written threats to Anita and Jerrell. The alleged threat to Anita was a postcard that reads, "The light from the Alter [sic] says give in abundance and receive ten fold. Tithe and suffer no more. /s/ The Sisters." The alleged threat to Jerrell is a postcard that reads "Gerald, You're going To Hell WITH JEZABELE [sic] /s/ PRAYING FOR you."

On their face, neither of these postcards appears to convey a threat. The State argues that, in the context of the relationship between the parties, these postcards are a threat to extort money from Anita and a threat to kill or cause bodily injury to Jerrell. The contextual evidence put forward by the State is that Appellant threatened to assault Jerrell in 1993, tried to run Anita off the road, drove by their house very slowly on a number of occasions, made an obscene gesture to Jerrell every time he saw him, made clicking noises in Anita's presence whenever he saw her in public, and sent them the other letters, which include similar statements about tithing and redemption.[2]

Whether a particular statement may properly be considered a threat is governed by an objective standard. *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.–Austin 1994, pet. ref'd). That standard is whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. *Id*.

The State argues that the letter to Jerrell was actually a threat "to bring about [Jerrell's] premature death," and that the reference to the biblical figure Jezebel would summon "horrendous" mental imagery of the judgment imposed upon Jezebel.[3] But there is nothing in the context of the

---

[2] Todd testified about two incidents where Appellant publicly upbraided him, including one incident in which Appellant threatened to assault Todd when Todd turned eighteen years of age. There was no evidence that Todd told his parents of these incidents.

[3] Jezebel was to be eaten by dogs. *See* I Kings 21:22–26.

relationship between the parties to suggest that the statement that Jerrell was going to hell was any kind of a threat to injure Jerrell. To be sure, a threat of physical harm need not be directly expressed, and it may be contained in veiled statements nonetheless implying injury to the recipient when viewed in all the circumstances. *Manemann*, 878 S.W.2d at 337. The jury was certainly entitled to infer that Appellant wished ill on Jerrell, or that he did not have high hopes for his eternal salvation. But there is nothing in the evidence that suggests the statement that Jerrell was going to hell was code for violence that Appellant was threatening to visit upon Jerrell. Appellant had, more than a decade prior, threatened to assault Jerrell. And he made that threat directly, unlike the postcard here informing Jerrell that he was going to hell.

We are mindful that the jury has a principal role in drawing inferences from facts. *Id*. at 338. However, even in the context of Appellant's other antisocial behavior directed at Jerrell and his family, there is nothing in this post card that would cause a reasonable person in Jerrell's situation to conclude that Appellant was threatening him with bodily injury. To be criminal, a threat must be made in a manner reasonably likely to alarm the person receiving the threat, but it must also contain a threat to inflict bodily injury on the recipient. TEX. PENAL CODE ANN. § 42.07(a)(2). Appellant's statements would certainly alarm any recipient. But a statement that Jerrell was going to hell, in the context of this case, is not a threat to inflict bodily injury. Therefore, we conclude that the evidence is legally insufficient on this count.

The post card sent to Anita suffers from the same defect. The thrust of the post card is the statement "tithe and suffer no more." The State argues that it was essentially a request for compensation for the loss of the horse, and threat of continuing suffering if compensation was not paid. Even accepting that construction, the post card is not a threat of bodily injury. There is no evidence that Appellant had inflicted any suffering that included, or alluded to, bodily injury or a felony following the killing of the horse. Therefore, whatever suffering that would be alleviated by acceptance of responsibility or payment of a tithe was not bodily injury.

As the court of criminal appeals recognized recently in an assault by threat case, the course of conduct between the threatener and the victim is important to understanding whether there is sufficient evidence of a threat. *See Olivas v. State*, 203 S.W.3d 341, 349–50 (Tex. Crim. App. 2006). In that case, the defendant shot at the victim's car while she was driving down the road. The victim knew the defendant had done something—she thought he threw rocks at her car—but she did not realize that he had shot at her until she stopped. *Id.* at 343. The court concluded that, based on

6

the previous interactions between the parties, which included violent threats, the victim was threatened at the time of the shooting even though she did not perceive that the defendant was shooting at her. *Id.* at 349–51.

This case is different because the course of Appellant's conduct following the killing of the horse did not include threats of violence. The jury was entitled to credit Anita's testimony that Appellant attempted to engage her in a traffic accident. However, there is no evidence to show that this incident occurred after the killing of the horse or to link the word "suffering" to an attempted traffic accident. We are mindful that the jury is entitled to draw reasonable inferences, and that an objective standard governs, but the construction advanced by the State would criminalize almost any utterance. The "suffering" Appellant inflicted on Anita following the killing of the horse did not include the threat of bodily injury, bodily injury, or a felony. Therefore, the statement that Anita's suffering would continue absent her paying a tithe is simply not a threat to inflict bodily injury or commit a felony in the context of this case.[4] Therefore, we conclude that the evidence is legally insufficient on this count.

## DISPOSITION

Having found the evidence legally insufficient in all three cases, we ***reverse*** and ***render*** a judgment of ***acquittal*** in cause numbers 12-07-00045-CR, 12-07-00046-CR, and 12-07-00047-CR.

        BRIAN HOYLE
             Justice

Opinion delivered November 26, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[4] The State also argues that the letter is extortion and therefore a threat to commit a felony because the federal mails were used. *See* 18 U.S.C. § 1341. Two problems are presented. First, the mail fraud statute has not been interpreted to criminalize threats of violence, which is how the State characterizes the leter. *See **United States v. Pendergraft***, 297 F.3d 1198, 1209 (11th Cir. Fla. 2002) (citing ***Fasulo v. United States***, 272 U.S. 620, 628, 47 S. Ct. 200, 202, 71 L. Ed. 443 (1926)); *see also **Hammerschmidt v. United States***, 265 U.S. 182, 188, 44 S. Ct. 511, 512, 68 L. Ed. 968 (1924) ("[The words 'to defraud'] do not extend to theft by violence."). Second, even if extortion is a Texas crime and the federal mail fraud statute applies to this conduct, the letter is not a threat to commit the felony of federal mail fraud. The harassment statute criminalizes threats to commit felonies. This letter either is mail fraud or it is not, but it is not a threat to commit the felony of mail fraud.