### SMITH v. UNITED STATES.

No. 2927.

Circuit Court of Appeals, Tenth Circuit.

Oct. 26, 1944.

Rehearing Denied Nov. 27, 1944.

Writ of Certiorari Denied Jan. 29, 1945.

See 65 S.Ct. 563.

644

Harry Seaton, of Tulsa, Okla. (John S. Severson, of Tulsa, Okla., on the brief), for appellant.

Cleon A. Summers, of Muskogee, Okla., for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, William Lee Smith, appeals from a conviction and sentence of eighteen months on an indictment which charged Smith, Woodrow Wilson Croom, and Shaheen M. Atyia, with a conspiracy to commit an offense against the United States, the substance of the conspiracy being that Croom, a member of the armed forces of the United States, with access to its stores, groceries and other property, furnished and being used for military service at Camp Gruber, Oklahoma, would unlawfully sell, convey and dispose of eggs, buter, cheese and other groceries from the said stores, and that codefendants Smith and Atyia, as operators of the Smith Mercantile Store at Braggs, Oklahoma, would purchase the said commodities from Croom with knowledge that they were the property of the United States. The indictment charged eight overt acts in furtherance of the conspiracy, and two substantive counts charged Croom with the felonious sale and disposal of the commodities.

The sufficiency of the indictment is first challenged on the grounds that it alleges a conspiracy under Section 80, Title 18 U.S.C.A., and since Section 80 does not cover conspiracy, the indictment is bad. But when the matter was raised by demurrer, the reference to Section 80 was explained as merely a typographical or clerical error, and that the conspiracy charged was made an offense by Section 88, Title 18 U.S.C.A., which is the general conspiracy statute under which the indictment is laid.

The next and more serious contention is to the effect that the United States Attorney stated for the record that the indictment was intended to charge a conspiracy to violate Section 36 of the Criminal Code, Section 87, Title 18 U.S.C.A., which section is void and inoperative as a criminal statute because it does not prescribe the punishment for violations with sufficient definiteness and clarity, therefore the indictment does not charge a conspiracy against the United States within the meaning of the general conspiracy statute. Section 88, Title 18 U.S.C.A.

When the conspiracy charged in the indictment is alleged to have commenced (November 1, 1943), Section 36 of the Criminal Code, Section 87, Title 18 U.S.C.A., provided in substance that whoever shall steal, embezzle or unlawfully sell, convey or dispose of any property of the United States furnished or to be used for the military or naval service, shall be punished "as prescribed in the preceding section". The preceding section, which is section 35 of the Criminal Code, 35 Stat. 1095, Sections 80, 82, 83, 84, 85, 86, Title 18 U.S.C.A., as amended October 23, 1918, 40 Stat. 1015; June 18 1934, 48 Stat. 996, and April 4, 1938, 52 Stat. 197, created three separate and distinct offenses, and provided three separate and distinct punishments of different severity for the violations of each offense.

A criminal statute must be definite and certain in respect to the punishment it is intended to impose. Holmes v. United States, 5 Cir., 267 F. 529; Haas v. Jennings, 120 Ohio St. 370, 166 N.E. 357; Ex parte Ellsworth, 165 Cal. 677, 133 P. 272; People v. McNulty, 93 Cal. 427, 26 P. 597,

29 P. 61. And a statute which, by reference to another, leaves the sentencing court in doubt as to the punishment it may impose for the described offense, is void and inoperative. For this reason, Section 36 was declared void and inoperative in Holmes v. United States, supra, wherein it was also specifically held that a conspiracy to violate this statute did not constitute an offense against the United States in violation of Section 88, Title 18 U.S.C.A. Moreover, the invalidity of the statute has long since been recognized by the Attorney General of the United States,[1] and at his suggestion (see U. S. Code Congressional Service 1943, No. 8, 2.275), the Congress by House Bill No. 1202, approved November 22, 1943, Pub. 188—78th Congress, 18 U.S.C.A. § 87, amended Section 36 by specifically designating which of the different punishments authorized by preceding Section 35 was applicable to violations covered by Section 36.

■ Thus it is plain that if the indictment here depends upon Section 36 for its validity, it fails to charge a conspiracy to commit an offense against the United States, and must therefore fall. But Section 37 of the Criminal Code, Section 88, Title 18 U.S.C.A., which is the substantive offense attempted to be charged in the indictment, makes unlawful a conspiracy to "commit any offense against the United States", and the validity of the indictment is determined by the facts therein alleged, and not the law to which reference may be made, either by the notations in the indictment itself or extraneous statements of the pleader. United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788; United States v. Hurto, 256 U.S. 524, 41 S.Ct. 541, 65 L.Ed. 1073; United States v. Nixon, 235 U.S. 231, 35 S.Ct. 49, 59 L.Ed. 207; Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509; Vedin v. United States, 9 Cir., 257 F. 550; Biskind v. United States, D.C., 281 F. 47, 28 A.L.R. 1377; Taylor v. United States, 7 Cir., 2 F. 2d 444; Buckner v. Hudspeth, 10 Cir., 105 F.2d 393; Elliott v. Hudspeth, 10 Cir., 110 F.2d 389; The S. S. Nea Hellis, 2 Cir., 116 F.2d 803. "We must look to the indictment itself, and if it properly charges

an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute." Williams v. United States, supra, 168 U.S. p. 389, 18 S.Ct. p. 94, 42 L.Ed. 509.

■ The gravamen of the indictment is to the effect that Croom, having access to the stores, groceries, and property of the United States at Camp Gruber, did unlawfully sell, convey and dispose of eggs, butter, cheese and other groceries, property of the United States, which was furnished and used for military service, to the defendants Smith and Atyia, who purchased the same with knowledge that they were contraband. While it is clear that the United States Attorney did, as he stated, intend to charge a conspiracy to violate Section 36 of the Criminal Code, it is also clear that the indictment charges all the elements of a conspiracy to violate Section 47 of the Criminal Code, Section 100, Title 18 U.S.C.A., which provides that whoever shall embezzle, steal or purloin any property or valuable thing whatever of the United States shall be punished as therein provided. No question is raised concerning the validity of this statute, and it follows that the indictment as thus construed does charge a conspiracy to commit an offense against the United States, and is therefore valid.

It is next contended that the evidence is insufficient to connect appellant with the conspiracy, if any, and that the trial court should have sustained a demurrer, granted the motion for directed verdict, or a new trial as timely requested. There was evidence tending to show the following facts: Appellant Smith was operating the Smith Mercantile Store at Braggs, Oklahoma, which is near Camp Gruber, a military establishment and a prisoner of war internment camp. Codefendant Atyia was employed as assistant manager in charge of the grocery department, and William Fullington was employed as a clerk at $20 per week. Smith, Atyia and Fullington all lived in the store building in quarters provided above the first floor. Atyia and oth-

---

[1] On June 22, 1912, Attorney General George Wickersham addressed Circular Letter No. 308 to the United States Attorneys in which he called attention to the uncertainty of punishment to be imposed for violations of Section 36, because the preceding Section 35 at that time created two separate and distinct punishments of different severity, and stated that unless corrective legislation could be had, cases falling under the scope of Section 36 should, where practical, be prosecuted under other applicable sections of the Code.

er clerks opened the store in the morning, and Smith closed it at night sometimes as late as ten or eleven o'clock. Codefendant Croom was a sergeant in the United States Army stationed at Camp Gruber, with access to the stores and groceries there. It was his particular duties to check out groceries and supplies from the Army Camp and to convey the same a short distance to a prison camp for use there.

About the 1st of November 1943, Croom approached Fullington, whom he knew by sight, concerning the sale of commodities to the store. Fullington told him that he would "have to see the boss". When Croom returned two or three days later, he was informed by Fullington that they would take some butter. On the next day Croom came to the store in an army supply truck and delivered 32 pounds of butter, property of the United States, to Fullington, and Smith paid for it in cash in the sum of $10.24. A few days later Croom delivered a case of eggs containing 30 dozen to the store, and he was paid in cash for the same by codefendant Atyia. On another day, Croom delivered 5 cases of eggs to the store, and was paid $37 therefor by Atyia. On another occasion, Croom delivered 42 pounds of butter and cheese to the store, and according to Croom's testimony, there was no one present but Smith, who paid him $8 as requested. He said that Smith discussed paying him by check, but that he wanted cash. On still another occasion when he delivered eggs, Fullington, who ordinarily did not have access to the cash register, paid him from the cash register at the suggestion of Smith. The defendants paid 30¢ to 32¢ per dozen for eggs, and from 30¢ to 32¢ per pound for butter. They sold the eggs for 50¢ to 55¢ per dozen, and the butter for 55¢ per pound. The eggs, butter and cheese were the property of the United States, and were furnished for the military service. During these transactions, Croom came to the store in a United States army supply truck, wearing his army uniform, and the eggs were contained in wooden crates plainly marked "Inspected U. S. Army". There was evidence to the effect that these markings on the crates were obliterated and marked out by a brush and stove polish; Fullington testified that they were marked out at the suggestion of Atyia and Smith.

Smith strenuously denied that he ever paid Croom any money for the commodities delivered at the store, that he knew anything about the transactions, or had any reason to believe that any merchandise in the store had been embezzled or stolen from the United States Army. Atyia admitted purchasing and paying for some of the merchandise, but stated that he had confidence in Fullington and relied upon him; that he respected the army uniform of Croom, and had no reason to believe that Croom did not have authority to sell them. There was also testimony to the effect that Fullington was purchasing the commodities for his own account, and that he sold some eggs in Muskogee and received the money therefor.

 The evidence was sharply conflicting, and that which was relied upon by the Government inconsistent in respect to some material matters, but there was sufficient competent evidence from which the jury was warranted in concluding that the appellant had guilty knowledge of the unlawful transactions, and its verdict must stand.

The judgment is affirmed.