Charles S. NELSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15726.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 23, 1960.

Decided Jan. 12, 1961.

Mr. Rex K. Nelson, Washington, D. C., with whom Mr. Eugene X. Murphy, Washington, D. C., was on the brief, for appellant.

Mr. Daniel J. McTague, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before Wilbur K. Miller, Chief Judge, and Danaher and Burger, Circuit Judges.

DANAHER, Circuit Judge.

Convicted on three counts [1] of perjury, appellant was given concurrent sentences of four months to two years, and now appeals.

 The indictment followed generally the language of D.C.Code § 22–2501 (1951). A motion to dismiss was denied, but the trial record indicates no basis whatever for a conclusion that the appellant had been misled as to the offenses with which he stood charged or that he was prejudiced in his defense. Had the appellant filed and had the trial court denied a motion for a bill of particulars, his argument as to the insufficiency of the allegations might have been entitled to greater weight.[2] There was no error in the denial of his first motion to dismiss.

Nor is there merit in his claim that the evidence was insufficient to show that he had sworn to three applications for licenses to solicit life insurance business. The Superintendent had caused blank forms to be prepared incorporating questions concerning material matter as prescribed by D.C.Code § 35–425 (1951). In addition, however, although not set forth in the Act, the Superintendent had included question No. 7 which reads: "Exclusive of minor traffic violations, have you ever been charged, convicted, or arrested for any offense against the laws of the District of Columbia or of any other jurisdiction?" Appellant answered in the negative on each of three applications. He knew that he had twice been convicted of the offense of "false pretenses." In the first case, he had been placed on probation for two years, and after his second conviction, had been sentenced to serve a term of one to three years. He thus had knowingly answered falsely a question in each of the documents which he offered to the Superintendent of Insurance as his own sworn applications. He can hardly now ask the court to accept his denial that he had been sworn by the two notaries in the face of their testimony to the contrary. The jury and the trial judge obviously accepted their version, and so do we.

[1.] The counts are substantially identical, charging that appellant having taken oath before a duly authorized notary "that his typewritten statements, declarations and answers contained in his Application for License under the Life Insurance Act, were true, which application is required by law to be sworn to, wilfully and contrary to such oath did state and subscribe to material matter contained in said application, which he did not believe to be true."

[2.] Cf. United States v. Debrow, 1953, 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92.

The Life Insurance Act[3] in section 35–425 dealing with an original application for a license to act as a *solicitor* contains no penal provision.[4] The section makes no reference to perjury, fraud or other misrepresentation in the procurement of the license.[5] In pertinent part, the section reads:

"No person shall act within the District for any life-insurance company as a \* \* \* solicitor in the solicitation or procurement of applications for insurance unless he has complied with the provisions of this section and has secured a license from the superintendent of insurance. Each applicant for such license shall file with the superintendent of insurance his written application therefor on blanks furnished by the superintendent, which application shall be signed and sworn to by the applicant and shall give his name, age, residence, place of business, and occupation for five years next prior to the date of application and also set forth his qualifications for such license, namely, his familiarity with the life-insurance laws of the District and with the provisions of the contracts to be negotiated; what insurance experience he has had, if any; what insurance instruction he has had or expects to receive; whether he has been refused or has had suspended or revoked a license to solicit insurance by the insurance department or supervising officials of the District of Columbia or of any State; whether any insurance company or any general agent claims such applicant is indebted under any agency contract or otherwise, and if so, the name of the claimant, the nature of the claim and the applicant's defense thereto, if any; whether he has had an agency contract canceled, and if so, when, by what company, or general agent and the reason for such action, and *such other information as the superintendent may require.*" (Emphasis added.)

Nowhere in the Act, so far as we can find, is perjury denounced except when committed by one already employed by a company.[6] Obviously, this appellant was not so situated when he filed his sworn application, but we find him indicted for a felony carrying a penalty of "not less than two nor more than ten years."[7] The only basis exhibited to us upon which this prosecution may rest is to be found in the italicized language in section 425, supra, purportedly authorizing the Superintendent to call for "such other information as the superintendent may require."

It may well be that the Superintendent should know whether or not an applicant for license as an insurance solicitor has ever been convicted of serious offenses. Obviously the false answer to question No. 7 might lull the Superintendent into automatic acceptance of the applicant's qualifications thus thwarting further investigation.[8] Certainly the false answer

---

3. Chapters 3 to 8 of Title 35, D.C.Code (1951); 48 Stat. 1127.

4. However, as to violations of the Life Insurance Act for which "no penalty is elsewhere provided by the laws of the District," a fine not exceeding $500 may be imposed for each violation. D.C.Code § 35–801 (1951), 48 Stat. 1176, Ch. VI, § 1.

5. D.C.Code § 35–426 (Supp. VIII, 1960) provides for the revocation or suspension of an already issued license on various grounds including fraud or misrepresentation in its procurement. A fine of $100 may follow conviction, or the Su-

perintendent may impose a penalty up to $200 and neither revoke nor suspend the license if he deems the public interest would best so be served.

6. D.C.Code § 35–408 (1951).

7. Id. § 22–2501; on the other hand, a solicitor who may be convicted of *embezzlement* shall be "punished accordingly." D.C.Code § 35–429 (1951).

8. Corrado v. United States, 6 Cir., 1955, 227 F.2d 780, 784, certiorari denied 1956, 351 U.S. 925, 76 S.Ct. 781, 100 L.Ed. 1455 and cases cited in note 2, dissenting opinion, Chaunt v. United States,

will predicate revocation or suspension of a license and, after conviction, a fine of $100, as provided in section 426, supra note 5.[9]

The Act provides that an agent, broker "or other person" who "knowingly or wilfully" makes a "false or fraudulent statement" with reference to an application for life insurance or for the purpose of obtaining a fee or commission from a life insurance company is guilty only of a misdemeanor.[10]

It is clear that Congress has conferred upon the Superintendent certain administrative functions. He acts under particular and enumerated conditions.[11] He has not been given the power to promulgate regulations. Congress has not authorized him so to act as to make felonious even a knowingly false answer to a question which Congress had not made material.[12] "Where the charge is of crime, it must have clear legislative basis."[13] In short, "Before one may be punished, it must appear that his case is plainly within the statute; there are no constructive offenses." [14]

We do not say the Superintendent may not seek "such other information" as may be required for the proper performance of his administrative function. We hold only that Congress has not grounded a perjury indictment upon a knowingly false answer to question No. 7, supra, nor has it authorized or required the Superintendent to do so.[15]

The appellant at the close of the trial renewed his motion to dismiss. It should have been granted.

Reversed.

1960, 364 U.S. 350, 357, 81 S.Ct. 147, 5 L.Ed.2d 120.

9. Compare D.C.Code § 35–428 (1951) dealing with an applicant for a *broker's* license, and providing that any person who violates any provision "of this section" (emphasis added) upon conviction shall be fined not to exceed $100.

10. D.C.Code § 35–719 (1951).

11. Cf. Atlantic Insurance Agency v. Jordan, 1955, 97 U.S.App.D.C. 184, 187, 229 F.2d 758, 761.

12. Williamson v. United States, 1908, 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278.

13. United States v. George, 1913, 228 U.S. 14, 22, 33 S.Ct. 412, 415, 57 L.Ed. 712; Shelton v. United States, 1947, 83 U.S. App.D.C. 32, 165 F.2d 241.

14. United States v. Resnick, 1936, 299 U.S. 207, 210, 57 S.Ct. 126, 127, 81 L.Ed. 127; Fasulo v. United States, 1926, 272 U.S. 620, 629, 47 S.Ct. 200, 71 L.Ed. 443.

15. Cf. D.C.Code § 35–426 (Supp. VIII, 1960). The testimony of the Deputy Superintendent in charge of licensing made it clear that conviction of crime does not bar the issuance of a license.