STATE of North Dakota, Plaintiff
and Respondent,

v.

Harold J. ODEGAARD, Defendant
and Appellant.

Cr. 379.

Supreme Court of North Dakota.

Feb. 25, 1969.

Lanier & Knox, Fargo, for appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Eugene Kruger, State's Atty. for Cass

County, and Russell D. Maring, Asst. State's Atty. for Cass County, Fargo, for respondent.

ERICKSTAD, Judge.

In this appeal we are asked to determine the constitutionality of a statute which, with certain exceptions, requires the operator of or a passenger on a motorcycle to wear a crash helmet.

By criminal information dated October 17, 1967, Mr. Harold J. Odegaard was charged with the offense of failing to wear a crash helmet while riding a motorcycle. Although we have only an abbreviated transcript of the trial court proceedings, it appears from that transcript and from Mr. Odegaard's brief that when the case came on for trial before the Cass County Court with Increased Jurisdiction, Mr. Odegaard stipulated that the facts were as set out in the criminal information; that he moved that the information be dismissed upon the grounds that the statute upon which it was based was unconstitutional; that this motion was denied by the trial court; that thereafter the trial court found Mr. Odegaard guilty of the offense charged in the information; that Mr. Odegaard before the imposition of sentence made a motion in arrest of judgment, again asserting the unconstitutionality of the statute; that this motion was also denied by the trial court; and that following the imposition of sentence, Mr. Odegaard appealed to this court.

In his notice of appeal he asserts that he appeals from the order denying his motion for dismissal, the judgment of conviction, and the order denying his motion in arrest of judgment. As all of the specifications of error are based upon his contention that the statute under which he was prosecuted is unconstitutional, that is the issue we must determine on this appeal.

The statute in controversy reads:

39–21–48. Crash helmets required for operators of and passengers on motorcy-cles.—Every operator of and passenger on a motorcycle, as defined by subsection 32a of section 39–01–01, shall at all times when such motorcycle is in motion be required to wear a crash helmet of a type and meeting the standards approved and established by the motor vehicle registrar, provided, however, such helmets shall not be required to be worn when such motorcycle is driven in a parade or ceremonial conducted or permitted under local ordinances.

North Dakota Century Code.

We may assume that one objective of this statute is the prevention or reduction of injuries to motorcyclists. We also take judicial notice of the fact that head injuries often occur when motorcyclists not protected by crash helmets are involved in accidents and that crash helmets are of some protection against such injuries. Mr. Odegaard in effect asserts that for this reason the statute is unconstitutional.

His argument is that in spite of what he denominates "the beneficent motives" of the statute, it must fail because it affects only his welfare and not the public welfare, and thus it deprives him of his personal freedom and his rights guaranteed by the due process clauses of the federal and state constitutions. He specifically enumerates §§ 1 and 13 of Article I of the North Dakota Constitution and the 9th and 14th amendments to the United States Constitution as being violated by this statute.

The pertinent parts of those sections and amendments read:

## ARTICLE I

## DECLARATION OF RIGHTS

Section 1. All men are by nature equally free and independent and have certain inalienable rights, among which are those enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness.

\*   \*   \*   \*   \*   \*

Section 13. \* \* \* No person shall be \* \* \* deprived of life, liberty or property without due process of law.

North Dakota Constitution.

### (ARTICLE IX)

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

\*   \*   \*   \*   \*   \*

### (ARTICLE XIV)

Section 1. \* \* \* No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

\*   \*   \*   \*   \*   \*

United States Constitution.

It is Mr. Odegaard's contention that the issue resolves itself into this question: "Is it constitutionally permissible for the state to abridge the liberty of an individual by compelling him, contrary to his desires, to adhere to a course of conduct ostensibly calculated to protect him from possible harm when such conduct has no relationship to the health, safety and welfare of other persons or the public at large?"

On first impression it may appear that whether a person wears a crash helmet or not affects only that person's welfare, but on careful consideration it becomes obvious that this is not true.

Before we discuss that issue, however, we point out that even if it were true, we do not concede that the statute would be unconstitutional, for we are not convinced that the legislature may not take reasonable measures to prevent persons from becoming public charges, which often is the result of the costs of long hospitalization in brain injury cases.

The Supreme Court of Rhode Island recently said:

> [I]t is our unqualified judgment that the purpose sought to be achieved by requiring cyclists to wear protective headgear clearly qualified as a proper subject for legislation.
>
> The defendant's contention to the contrary presupposes that protection for the motorcycle operator was the sole motivation for the general assembly's action. Even if this were so, we are not persuaded that the legislature is powerless to prohibit individuals from pursuing a course of conduct which could conceivably result in their becoming public charges. \* \* \*

State ex rel. Colvin v. Lombardi, 241 A. 2d 625, 627 (R.I.1968).

Considering the relationship of the statute requiring the wearing of crash helmets to highway safety and the exercise of valid police power, the Rhode Island court said:

> [T]he requirement of protective headgear for the exposed operator bears a reasonable relationship to highway safety generally. It does not tax the intellect to comprehend that loose stones on the highway kicked up by passing vehicles, or fallen objects such as windblown tree branches, against which the operator of a closed vehicle has some protection, could so affect the operator of a motorcycle as to cause him momentarily to lose control and thus become a menace to other vehicles on the highway.

State ex rel. Colvin v. Lombardi, *supra*, 627.

As recently as June 1968 the Supreme Judicial Court of Massachusetts upheld a statute similar to ours. We quote a part of its opinion:

> It lies within the power of the Legislature to adopt reasonable measures for the promotion of safety upon public

ways in the interests of motorcyclists and others who may use them. (citation omitted) The act of the Legislature bears a real and substantial relation to the public health and general welfare and is thus a valid exercise of the police power. (citation omitted) As contended by the Commonwealth, "[t]he legislation is reasonable, applies to all equally, and is directly related to highway safety."
* * *

Commonwealth v. Howie, 238 N.E.2d 373, 374 (Mass.1968).

Mr. Odegaard has referred us to two intermediate appellate court decisions construing the constitutionality of crash helmet laws.

The first is American Motorcycle Ass'n v. Davids, 11 Mich.App. 351, 158 N.W.2d 72, decided by the Court of Appeals of Michigan. That court, applying the maxim stated by John Stuart Mill that "the individual is not accountable to society for his actions, insofar as these concern the interests of no person but himself," held the Michigan statute unconstitutional.

The Massachusetts court in *Howie* disposed of the Michigan decision as follows:

A recent Michigan decision to the contrary is not persuasive. On this general subject we find ourselves in agreement with State ex rel. Colvin v. Lombardi, R.I., 241 A.2d 625, decided May 8, 1968.

Commonwealth v. Howie, *supra*, 374.

In reaching its conclusion the Michigan court applied the following test:

"The test of legitimacy of the exercise of the police power is 'the existence of a real and substantial relationship between the exercise of those powers in a particular manner in a given case and the public health, safety, morals, or the general welfare.' "

American Motorcycle Ass'n v. Davids, 11 Mich.App. 351, 158 N.W.2d 72, 76 (1968), quoting Grocers Dairy Co. v. McIntyre, 377 Mich. 71, 138 N.W.2d 767,

770 (1966), quoting Roman Catholic Archbishop of Detroit v. Village of Orchard Lake, 333 Mich. 389, 53 N.W.2d 308 (1952).

See State v. Cromwell, 72 N.D. 565, 9 N.W.2d 914, 920–921 (1943), for statement of a similar test by this court.

The second intermediate appellate court decision referred to us by Mr. Odegaard is Everhardt v. City of New Orleans, 208 So.2d 423 (1968). This decision is not the final word in Louisiana, as certiorari has been granted by the Louisiana Supreme Court. See Everhardt v. City of New Orleans, 252 La. 269, 210 So.2d 508 (1968). Notwithstanding that the Louisiana Court of Appeal found the ordinance in question unconstitutional, we find no reason stated in the opinion which persuades us that our statute is unconstitutional.

█ We believe the test applied in *American Motorcycle Ass'n* is proper, but in applying it we reach the opposite result. It is our view that the Rhode Island and Massachusetts opinions, in light of the interrelating elements of highway safety, are the better reasoned opinions. Accordingly, we have no difficulty in finding the existence of a real and substantial relationship between the exercise of the police powers contained in our crash helmet statute and the public health, safety, and welfare. It follows that the statute in no way violates any of the provisions of our state and federal constitutions.

As a dissent to this opinion has been written, we shall consider the issue which it raises. That issue, not raised by any of the parties to this action, is whether this court has jurisdiction of the subject matter.

The dissent argues that § 1 of chapter 322 of the 1967 session laws, upon which the criminal information in this case is based, does not set forth a crime, and that therefore this court does not have jurisdiction over the subject matter and for that reason cannot reach the merits of the con-

troversy, i. e., the constitutionality of that section.

██ As always, it is our duty in construing a statute to attempt to determine the legislative intent. In so doing we cannot assume that the legislature intended a useless act.

The construction placed upon this statute by the dissent makes the act a useless one. The dissent asserts that proceedings to enforce the act must be civil in nature, but it fails to explain how any civil proceeding could make the statute effective.

As we have indicated earlier, it is our view that this act has as one of its major objectives highway and traffic safety. In this regard, following an interim legislative research study, H.B. 529 was introduced in the 1963 legislative session. Section 19 of that bill created a chapter on equipment of vehicles and gave the Motor Vehicle Registrar broad authority.

The following is the pertinent part of the penalty provision contained in H.B. 529:

> 39–21–46. Scope and Effect of Regulations—Penalty.) 1. *It is a misdemeanor* for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter, or which is equipped in any manner in violation of this chapter, or *for any person to do any act forbidden or fail to perform any act required under this chapter*. (emphasis added)
>
> *   *   *   *   *   *

Laws of North Dakota 1963, ch. 283, § 3, at 510.

Although the legislature, in enacting H. B. 595, which is now ch. 322 of the 1967

session laws (the crash helmet statute), did not specifically assert that it should be a part of N.D.C.C. ch. 39–21, from its content it is obvious that § 1 thereof relates to *equipment* that must be used when operating or riding a motorcycle. It also places authority for establishing standards with the Motor Vehicle Registrar, as did H.B. 529, ch. 283 of the 1963 session laws (now N.D.C.C. ch. 39–21). In referring to N.D. C.C. § 39–01–01 (32a) the legislature further tied the act into title 39, which is the title on motor vehicles, § 39–01–01 being the section on definitions. Accordingly, we believe the legislature may well have intended that the penalty provisions of § 39–21–46 should apply. As it failed to specifically so provide, however, we must search elsewhere for the applicable penalty. In that respect § 39–07–06 might reasonably apply. It provides a general penalty for the violation of any of the provisions of the title on motor vehicles not otherwise covered.

We do not rely on that section, however, as the legislature did not specifically place the crash helmet statute under the motor vehicle title. It is our view that under these circumstances N.D.C.C. §§ 12–17–27 and 12–06–14 apply:

> 12–17–27. Doing prohibited act—Misdemeanor.—When the performance of an act is prohibited by any statute and no penalty for the violation of such statute is imposed in any statute, the doing of such act is a misdemeanor.
>
> 12–06–14. Punishment of misdemeanor.—Except in cases where a different punishment is prescribed by law, every offense declared to be a misdemeanor is punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than five hundred dollars, or by both such fine and imprisonment.

North Dakota Century Code.

The dissent asserts that § 12–17–27 does not apply because it does not embrace

within its definition the omission of the performance of an act commanded by a statute.

It is interesting, however, that just prior to the expression of that view in the dissent it is stated that "A crime is defined by our statute as 'an act committed or omitted in violation of a statute forbidding or commanding it * * *' Section 12–01–06, N.D.C.C."

Is not the failure to wear a crash helmet when the wearing of such a helmet is commanded by a statute the omission of an act in violation of a statute commanding it?

The cases cited in support of the dissent's position that the crash helmet statute does not set forth a crime are Langer v. Goode, 21 N.D. 462, 131 N.W. 258, Ann. Cas.1913D, 429 (1911) and Brissman v. Thistlethwaite, 49 N.D. 417, 192 N.W. 85 (1922).

Let us analyze those cases:

The first is a civil, not a criminal, case, in which the plaintiff sought to recover from the defendant damages alleged to have accrued to the plaintiff by reason of the defendant's failure to destroy certain wild mustard growing on his farm. Under the statute the county commissioners were to have prescribed the time and manner of destroying noxious weeds, and this they had not done. The plaintiff was not permitted to recover civil damages for the defendant's failure to destroy the wild mustard because the county commissioners had failed to perform their duty. In the instant case it is not asserted that the Motor Vehicle Registrar did not fulfill his duty under the act.

What the dissent relies upon is dictum contained in the opinion that

Section 8760 of the [1905] Revised Codes [now N.D.C.C. § 12–17–27] makes it a crime to do any act, the performance of which is prohibited by statute in cases where no penalty for the violation of the statute is imposed under any statute, but this section cannot be construed so as to make it a criminal offense to fail to do an act which may be required by statute.

Langer v. Goode, *supra*, 131 N.W. 259.

The dissent's authority is not only dictum: it is dictum without citation of any authority. Reason does not uphold it.

It is our view that the requirement that a person who operates or rides a motorcycle wear a crash helmet is meaningless if it is not construed as a prohibition against operating or riding a motorcycle unless a crash helmet is worn.

The reason for the holding in the second case cited by the dissent is not stated in the dissent, but it is clear from the following quotation from that case:

The last section in the act reads thus:

"Any certified public accountant who shall falsify a report, statement, investigation or audit, or who shall in any other manner be guilty of a misrepresentation as a certified public accountant, shall be guilty of a misdemeanor and shall be punished accordingly." Section 557, C.L. 1913.

Hence, we do not have a situation where the Legislature passing a law, either intentionally or otherwise, failed to consider the question of its violation and make provision therefor. Here the Legislature considered that question, and stated what acts should be punishable as violative of the act. It is a maxim of the law that the expression of one thing is the exclusion of another. The rule of construction thus expressed is applicable here. Where, as here, a statute purports to regulate the carrying on of a vocation or profession not formerly subject to regulation, and designates certain acts and a certain class of persons as subject to its penalties, the acts and persons so designated are exclusive and all other acts and persons are deemed to be exempted. 2 Lewis' Sutherland Stat. Const. (2d Ed.) § 491, pp. 916–918. * *

Brissman v. Thistlethwaite, *supra,* 192 N.W. 88–89.

The most recent decision of our court which we have found applying §§ 12–17–27 and 12–06–14 is that of State v. Prince, 75 N.D. 386, 28 N.W.2d 538 (1947).

In that case the defendant asserted that as no penalty was provided for in the statute under which he was prosecuted, it did not set forth a crime. The pertinent statute read:

No person shall sell or deliver any beer, alcohol or alcoholic beverages to any person under the age of 21 years, incompetent person, Indian as defined by federal law, or a person who is an inebriate, or habitual drunkard.

Laws of N.D.1945, ch. 52, § 1, at 107.

In that case the defendant was charged with having sold intoxicating liquor to a minor.

In holding that the statute under which the defendant was prosecuted set forth a crime, and that the trial court had the power to impose a criminal penalty, the court applied N.D.R.C.1943 §§ 12–1727 and 12–0614. Syllabus 3 of the opinion reads:

Where a statute prohibits the performance of an act without prescribing a penalty for its violation, the doing of such act is a misdemeanor under the provisions of Section 12–1727, R.C.N.D.1943, and is punishable by the penalty provided by Section 12–0614, R.C.N.D.1943.

State v. Prince, *supra,* 28 N.W.2d 539.

Sections 12–1727 and 12–0614 of the Revised Code of 1943 are identical to Sections 12–17–27 and 12–06–14 of the Century Code.

Although the language of the statute construed in *Prince* is more clearly prohibitory than the language of the statute in the instant case, we believe it would be a very strained construction to view the language of the statute here as other than prohibitory, for if one is required to wear a crash helmet when operating or riding a motorcycle, he must certainly be prohibited from operating or riding a motorcycle when not wearing a crash helmet.

■ Construing §§ 12–01–06, 12–17–27, and 12–06–14 in such a way that they are not in conflict, we conclude that the crash helmet statute sets forth a crime, and that therefore this court had not only the jurisdiction to act but also the obligation to reach the merits of the controversy presented to us.

In light of what we have previously said herein on the merits and what we have now concluded with respect to the issue of jurisdiction, we affirm the orders and judgment of the trial court.

STRUTZ and PAULSON, JJ., concur.

TEIGEN, Chief Justice (dissenting).

I dissent on the ground that failure to comply with the requirements of Section 39–21–48, Subsection 1, N.D.C.C., is not a crime and therefore the trial court and this Court on appeal do not have jurisdiction of the subject matter. Therefore we cannot reach the constitutional question.

Criminal jurisdiction is that which exists for the punishment of crimes. The court derives its jurisdiction in criminal cases from the law and its jurisdiction extends only to such matters as the law declares criminal, and when a court undertakes to punish for an offense to which no criminality is attached, it acts beyond its jurisdiction. In re Corryell, 22 Cal. 179, 7 P. 178; Ex parte Rickey, 31 Nev. 82, 100 P. 134; 21 Am.Jur.2d, Criminal Law, Secs. 376 and 379; 22 C.J.S. Criminal Law §§ 107 and 108.

A crime in this State is defined by statute as follows:

"A crime or public offense is an act committed or omitted in violation of a

statute forbidding or commanding it, and to which is annexed, upon conviction, one of the following punishments:

"1. Death;

"2. Imprisonment;

"3. Fine;

"4. Removal from office;

"5. Disqualification to hold or enjoy any office of honor, trust, or profit under this state; or

"6. Other penal discipline."

Section 12–01–06, N.D.C.C.

Section 39–21–48, N.D.C.C., was enacted as Subsection 1 of Chapter 322 of the Session Laws of 1967. It is as follows:

"AN ACT

"To require motorcycle operators and passengers to wear protective helmets and to preclude the carrying of passengers on certain two-wheel motorcycles.

"Be It Enacted by the Legislative Assembly of the State of North Dakota:

"Section 1. CRASH HELMETS REQUIRED FOR OPERATORS OF AND PASSENGERS ON MOTORCYCLES.) Every operator of and passenger on a motorcycle, as defined by subsection 32a of section 39–01–01 of the North Dakota Century Code, shall at all times when such motorcycle is in motion be required to wear a crash helmet of a type and meeting the standards approved and established by the motor vehicle registrar, provided, however, such helmets shall not be required to be worn when such motorcycle is driven in a parade or ceremonial conducted or permitted under local ordinances."

\*  \*  \*  \*  \*  \*

The above statute does not purport to create a crime or to impose any penalty or punishment whatsoever upon one who operates a motorcycle or rides as a passenger thereon while not wearing a crash helmet.

The statute requiring every operator of and passenger on a motorcycle to wear a crash helmet when such motorcycle is in motion does not provide that failure to comply with the statutory provision constitutes a crime, a misdemeanor, an offense, or any other term used to define a crime, nor does it directly or by reference impose a penalty.

The statute legislates upon a subject not heretofore governed. It is a new statute. Standing alone, the statute is not penal and it does not incorporate by reference any other statute that would make it penal.

We have said that penal statutes are to be fairly construed according to the legislative intent as expressed in the enactment, the court refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them, and on the other, equally refusing, by any mere verbal nicety or forced consideration or equitable interpretation, to exonerate parties plainly within their scope. State v. Fargo Bottling Works Co., 19 N.D. 396, 124 N.W. 387, 26 L.R.A.,N.S., 872.

A criminal statute must be definite and certain in respect to the punishment it is intended to impose. Smith v. United States, 10 Cir., 145 F.2d 643, cert. denied, 323 U.S. 803, 65 S.Ct. 563, 89 L.Ed. 641. Statutes are not to be enlarged by construction or extended by inference to include acts not within the terms of the language defining crimes. State v. Clark, 67 S.D. 133, 290 N.W. 237; Nelson v. United States, 109 U.S.App.D.C. 392, 288 F.2d 376; United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127; Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443. Where a crime is charged it must have a clear legislative basis. Nelson v. United States, supra; United States v. George, 228 U.S. 14, 33 S.Ct. 412, 57 L.Ed. 712.

The question then arises: Does the alleged criminal information charge a crime at all? Chapter 322 of the Session Laws of 1967 was designated as Section 39–21–48

in the 1967 pocket supplement to Volume 7 of the North Dakota Century Code by authority of the legislative assembly under the supervision and with the assistance of the legislative research committee and the secretary of state. The section number, 39-21-48, was not designated by the legislature in the enactment of the statute. The designation was an administrative decision by the legislative research committee and the secretary of state. Title 39 of the North Dakota Century is entitled "Motor Vehicles" and I assume the statute was given title number 39 because that is the title referred in the statute which defines a motorcycle. However, it is not the motorcycle or its operation that is governed by the statute in question. The statute governs the "operator of and the passenger on" a motorcycle. Subsection 32a of Section 39-01-01 defines a motorcycle and the section number was inserted in the statute for that purpose only. Thus the statute is not directed to the motorcycle nor the operation thereof, but creates a duty imposed upon a person to wear a crash helmet under the conditions described in the statute. Title 39 governs motor vehicles and provides rules and regulations pertaining to the operation of motor vehicles, equipment, size, width, height, etc. Although a motorcycle is a motor vehicle [Section 39-01-01, Subsection 32a] it is not the motorcycle, its operation or equipment, that is governed by the statute here under consideration.

Section 39-07-06, N.D.C.C., is a general penalty provision contained in Title 39. It provides that any person violating any of the provisions of Title 39 for which another penalty is not provided specifically shall be subject to punishment as provided in that section. However, this section is not applicable to Chapter 322 of the Session Laws of 1967 for the reasons given above and for the further reason that this chapter was not classified by the legislature in its enactment of Chapter 322 of the Session Laws of 1967 as coming within Title 39. Furthermore, Chapter 322 of the Session Laws of 1967 is not specially designed to affect the operator of or passenger on a motorcycle in motion upon a highway or street. It is all-encompassing as to place. The motor vehicle laws deal with motor vehicles in relation to their use on the highways and streets. The only requirement to make Chapter 322 of the Session Laws of 1967 operative is that the motorcycle be in motion, wherever that may be. I believe the statute was classified under Title 39 for convenience and indexing purposes only.

"The juxtaposition of statutory provisions as a result of rearrangements in codes, revisions, or compilations is not decisive of the effect or application of such provisions. Such rearrangements are ordinarily not regarded as altering the construction of the statutes included in the compilation. The classification and arrangement should not obstruct or obscure the interpretation of the law as a whole, or the meaning derived from the history and express provisions of the law. It is clear that the place assigned to a statute in a compilation cannot control the plain meaning expressed in the statute itself. Sometimes, it is expressly provided in codes that the distribution and classification of the several parts thereof are made for the purpose of convenience and orderly arrangement, and therefore no implication or presumption of a legislative intention is to be drawn therefrom."

50 Am.Jur., Statutes, Sec. 448.

For the reasons aforesaid it is my opinion that Section 39-07-06, N.D.C.C., providing for a general penalty for violations of Title 39, is not applicable to Chapter 322 of the Session Laws of 1967 and does not make its violation a crime.

The next question is: Does Section 12-17-27, N.D.C.C., apply? It provides:

"When the performance of an act is prohibited by any statute and no penalty for the violation of such statute is imposed in any statute, the doing of such act is a misdemeanor."

This is a general provision intended to apply in those cases where the legislature has enacted a law declaring certain acts to be prohibited or unlawful but prescribes no punishment for the violation thereof.

A crime or public offense is defined by statute in North Dakota. Section 12–01–06, N.D.C.C. In North Dakota all crimes are statutory and no act is criminal unless the legislature has in express terms declared it to be so. In this state there is no common law in any case where the law is declared by the code. Section 1–01–06, N.D.C.C. The will of the State as a sovereign is expressed by its constitution, its statutes, and the decisions of its tribunals enforcing those rules. Section 1–01–03, N.D.C.C.

A crime is defined by our statute as "an act committed or omitted in violation of a statute forbidding or commanding it * *" Section 12–01–06, N.D.C.C.

Section 12–17–27, N.D.C.C., purports to prescribe an act as a misdemeanor where the performance of the act is prohibited. It does not embrace within its definition the omission of the performance of an act commanded by a statue.

In Langer v. Goode, 21 N.D. 462, 131 N.W. 258, this Court in a civil action for the recovery of damages against a neighbor, on the theory that the defendant's neighbor, contrary to law, permitted noxious weeds to grow and bear seed, injuring the plaintiff, held in construing the statute requiring that noxious weeds should be destroyed, that "there is a difference between omitting to do something which is required to be done by the statute, and the doing of something which is prohibited by the statute." The Court, in that case, concluded that "Section 8760 of the Revised Code [this is now Section 12–17–27, N.D.C.C.] makes it a crime to do any act the performance of which is prohibited by statute in cases where no penalty for the violation of the statute is imposed under any statute, but this section cannot be construed so as to make it a criminal offense to fail to do an act which may be required by statute."

Chapter 322 of the Session Laws of 1967 (Section 39–21–48, N.D.C.C.) does not prohibit or forbid an act; it requires one. For these reasons it is my opinion that Section 12–17–27, N.D.C.C., does not make a failure to wear a crash helmet, under the circumstances described in the statute, a criminal offense or a crime.

A similar result is obtained by this Court in Brissman v. Thistlethwaite, 49 N.D. 417, 192 N.W. 85. In that case an alleged criminal complaint charged that the defendant practiced as an accountant and assumed the title of certified public accountant without having received his certificate as a certified public accountant from the board of accountancy. The statute in question, under which the defendant was charged, provided:

"Any person in order to assume the title of certified public accountant or the abbreviation C.P.A., or any other words or letters or abbreviations tending to indicate that the person, firm, or corporation so using the same is a certified public accountant must receive a certificate as a certified public accountant. * * *"

Section 551 of the Compiled Laws of 1913.

The Act containing that part of the statute quoted above contained a penalty clause but the penalty clause did not embrace or define as a crime one assuming the title of a certified public accountant of this state by misrepresenting himself as such because he had not received a certificate as a public accountant. This Court, in disposing of the action by dismissal, stated:

"The complaint is drafted under that statute, but the statute does not create a crime because a violation of the command is not made penal or in any way punishable.

*　　*　　*　　*　　*　　*

"Obviously there is no penalty or punishment annexed to the violation of section 3, and hence the section does not create a crime."

On a petition for rehearing, the Court considered whether Section 9433, Compiled Laws of 1913, which is now Section 12–17–27, N.D.C.C., applied. The Court, in refusing to apply that section to create a crime for the violation of Section 551 of the Compiled Laws of 1913, quoted above, stated: "Section 9433, [Compiled Laws of 1913], is a general provision intended to apply in those cases where the legislature has enacted a law declaring certain acts to be prohibited or unlawful, but prescribed no punishment for a violation thereof" and concluded that the contention of the State that this section should apply is not well founded.

In the instant case the statute under the circumstances described therein requires that a crash helmet be worn. The statute does not declare that failure to wear a crash helmet is a crime or an offense, nor does it prescribe a penalty. The general penalty statutes are not applicable for the reasons heretofore stated. Thus the violation of the requirement of the statute that a crash helmet be worn does not constitute a crime. The violation of the statute in question is not made a crime and therefore a criminal prosecution is barred. Proceedings to enforce it must therefore be civil in nature. The court has no jurisdiction of the subject matter where the information charges as a crime the omission of an act which is not made a crime by statute. Jurisdiction of the subject matter cannot be conferred by consent or waiver of the parties. It is derived solely from the law. When it is ascertained that no jurisdiction exists, the court can go no further and no consideration of policy or convenience should induce the court to render a decision that would be merely advisory. Danforth v. City of Yankton, 71 S.D. 406, 25 N.W.2d 50.

I conclude the appeal should be dismissed with direction to the lower court to set aside its judgment of conviction and sentence, and to dismiss the action.

As an addendum to my dissent I must make the observation that Section 39–21–46, N.D.C.C., cited by the majority in answer to my dissent, was enacted by the 1963 session of the Legislature as Chapter 283, whereas Chapter 322 (the crash helmet statute) was enacted in 1967, four years later. No reference is made in Chapter 322 of the Session Laws of 1967 to Section 39–21–46 or Chapter 283 of the Session Laws of 1963, nor to any of the subject matters of that chapter. Certainly it was not the intent of the Legislature that Section 39–21–46 apply.

It is obvious the majority are confused, and rightly so, because the Legislature provided no penalty for a violation of the crash helmet statute. In the majority's opinion, in answer to my dissent, they say:

"Accordingly, we believe the legislature *may well have intended* that the penalty provisions of § 39–21–46 should apply. *As it failed to specifically so provide,* however, *we must search elsewhere* for the applicable penalty. In that respect § 39–07–06 *might reasonably* apply. It provides a general penalty for the violation of any of the provisions of the title on motor vehicles not otherwise covered.

"*We do not rely on that section,* however, as *the legislature did not specifically place the crash helmet statute under the motor vehicle title.* It is our view that under these circumstances N.D.C.C., §§ 12–17–27 and 12–06–14 apply: * * * [Emphasis added.]

Thus the majority have pointed out three penalty provisions in our code but are unable to say specifically that any one of them applies to the crash helmet statute. They conclude, however, that in view of this conundrum Sections 12–17–27 and 12–06–14 apply. It is a strained construction.

"According to some authority, it is the punishment prescribed which makes an act a crime, not a mere interdiction of conduct without punishment, and a criminal statute without a penalty clause is of no force and effect, so that no conviction may be had thereunder. Moreover, the statute must be definite and certain

with respect to the punishment it is intended to impose. So it has been held in some of the cases that where an act is a crime solely by statute, and no penalty is prescribed in the statute, an indictment will be quashed, or a judgment arrested; or in other words, that a description, definition, and denouncement of acts necessary to constitute a crime do not make the commission of such act or acts a crime unless a punishment is annexed, for punishment is as necessary to constitute a crime as its exact definition.

\* \* \* \* \* \*

"However, a statute which, by reference to another, leaves the sentencing court in doubt as to the punishment it may impose for a described offense is void."

22 C.J.S. Criminal Law § 25.

KNUDSON, J., concurs in the dissent of TEIGEN, C. J.