**UNITED STATES of America, Plaintiff,**

v.

**Paul GILL, Defendant.**

**No. 84 CR 20020.**

United States District Court,
N.D. Illinois, W.D.

Nov. 3, 1987.

---

Thomas J. Royce, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty., Chicago, Ill., Keith C. Syfert, Asst. U.S. Atty., Rockford, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Paul Gill ("Gill") was indicted, tried, convicted and sentenced under 18 U.S.C. § 1341 ("Section 1341") on 15 counts of mail fraud, all stemming from financial depredations Gill committed in handling fishing and hunting license fees while he was County Clerk of Winnebago County. Though Gill has served the custody part of his sentence (30 months less applicable good time credits), he remains on post-custody probation.[1] Now Gill has become one of the early marchers in the parade kicked off by *McNally v. United States,* — U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987): His counsel has moved to vacate his conviction under 28 U.S.C. § 2255 ("Section 2255").

### *Procedure and Substance*

Several procedural aspects of the pretrial, trial and post-trial proceedings involving Gill are relevant. Gill filed no pretrial motions at all, either challenging the indictment or in any other respect. Nor did Gill lodge any objections to the jury instructions quoted later in this opinion (in fact, as will be seen, Gill's theory-of-the-case instruction was directed solely at the government's claim of *financial* fraud on Gill's part—not at the "intangible rights" element on which *McNally* later focused). Finally, Gill took no direct appeal from his conviction, so he once again lodged no challenge either to the sufficiency of the indictment or to the validity of his conviction in

---

1. Among other conditions of probation, Gill is obligated to provide community service and make restitution. Neither of those conditions has been fully satisfied.

terms of "intangible rights" (or anything else, for that matter).

As for the trial itself, it proved (beyond a reasonable doubt, as the jury determined) two fraudulent schemes on Gill's part—the two schemes charged in the indictment.[2] Both stemmed from Gill's authority, as elected County Clerk, to sell licenses to the public both directly (over the counter from his Clerk's Office) and indirectly (to private agents for resale to the public). All proceeds of those sales, aggregating more than $100,000 in each April 1–March 31 license year, were required by state law to be remitted monthly to the Illinois Department of Conservation ("Department"), together with reports itemizing and accounting for license sales during the preceding month.

Gill's first scheme was a simple one: He pocketed the state's money received from over-the-counter license sales. Checks received in payment for licenses were converted into cash, the cash was accumulated in the Clerk's Office vault and Gill periodically deposited the accumulated cash in his personal checking account. To cover up the growing shortage, Gill filed false reports with Department and, following the end of each license year, sent money from next year's license sales to Department in purported remittance of the sales during the just-expired year. Fraudulent mailings charged in the first six counts of the indictment comprised the license requisitions and remittances to Department that facilitated and implemented the scheme.

Gill's second scheme was only a bit more sophisticated: To take advantage of the fact that money breeds money, he delayed the required remittances to Department of the proceeds he received from license sales by authorized agents, meanwhile putting the funds to work in his personal interest-bearing bank accounts or certificates of deposit. Because that kind of float was always available (whereas the first scheme

had the Ponzi-like problem of Gill's having to borrow more and more from the next year to meet each current year's delinquency), more money was involved in the second scheme: some $33,000 in ill-gotten gains, as compared with some $7,000 under the first scheme. Here the fraudulent mailings charged in the last nine counts were the misleading remittances to Department (Gill always understated the actual sales to maximize the float) and the bank statements on Gill's own accounts, which he falsely labeled as though they were Department accounts—though he pocketed the interest personally.

### Availability of Section 2255

■ As a threshold matter, Gill can call upon Section 2255 even though he is no longer physically confined within the Bureau of Prisons system. Just as a prisoner on parole is "in custody" for purposes of a 28 U.S.C. § 2241 habeas corpus petition challenging a state conviction on federal constitutional grounds (*Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)), so a federally-convicted Section 2255 petitioner remains "in custody" (in the statutory sense) so long as he is under the legal restraints imposed by probation (*Wright v. United States*, 732 F.2d 1048, 1050 n. 2 (2d Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985) is perhaps the most recent of the appellate cases so holding; and cf. *Ohrynowicz v. United States*, 542 F.2d 715, 717 n. 3 (7th Cir.), *cert. denied*, 429 U.S. 1027, 97 S.Ct. 650, 50 L.Ed.2d 630 (1976)). This opinion can therefore turn to the merits of Gill's motion.

### "Intangible Rights" and "Property Rights"

Gill's conviction was grounded in its entirety on mail fraud scheme charges, exemplified by Count One ¶ 3: [3]

---

**2.** Indeed, the facts as to what Gill *did*—the predicate for the mail fraud charges—were really not in dispute at all. Instead Gill contested the charge of his criminal *intent* in having engaged in his admitted course of conduct (see Gill's

theory-of-the-case jury instruction, quoted later in the text).

**3.** Each of Counts Two through Six incorporated the quoted paragraph by reference. Count Seven charged a scheme identical to that in Count One, except for the dates alleged and except that

3. From in or about March 1979, to in or about March 1983, PAUL P. GILL, defendant herein, devised and intended to devise a scheme to obtain money by means of false and fraudulent pretenses and representations, and to defraud:

(a) the Department, the State of Illinois, and the County of Winnebago of approximately $7,415.50 in monies collected by him, in his capacity as County Clerk, from the sale of licenses over-the-counter of the County Clerk's office; and

(b) the Department, the State of Illinois and its citizens, and the County of Winnebago and its citizens of:

(1) their right to have the monies collected by him, in his capacity as County Clerk, from the sale of licenses remitted timely, honestly, fairly, and in accordance with the requirements of the Department and applicable laws; and

(2) their right to his honest, loyal, and faithful service.

Paragraph 3(b)'s partial invocation of "intangible rights" reflected the then-fashionable use of the doctrine pioneered by our own Court of Appeals in the 1970s and adopted by a number of Courts of Appeals since then.

During the course of the jury instructions that followed counsel's closing arguments and immediately preceded jury deliberations, Gill's jury was instructed that his conviction on each count would require proof beyond a reasonable doubt of the following essential element:

First, that the defendant knowingly and with intent to defraud, devised and participated in the scheme to defraud which is described in the indictment....

Though that obviously added nothing to the language of the indictment already quoted,

other jury instructions (not objected to by Gill's counsel as infirm under Section 1341) did:[4]

Having an "intent to defraud" means knowingly doing an act with the intent wrongfully to deprive another of something of value. A "scheme to defraud" means some plan or course of action intended wrongfully to deprive another of something of value. For purposes of defining both those terms, "something of value" can include what the law describes as "intangible rights."

The Illinois Department of Conservation, the State of Illinois and its citizens, and the County of Winnebago and its citizens have an intangible right to the loyal, faithful, and honest services of public employees. A scheme to defraud them of that intangible right may constitute a scheme to defraud within the meaning of the mail fraud statute.

The indictment in this case charges that the defendant obtained money in an approximate amount. The government need not prove that the defendant obtained that specific amount of money. It is only necessary that the evidence establish beyond a reasonable doubt that the defendant obtained some sum of money reasonably near the amount charged in the indictment. Defendant's theory of the case is that he is not guilty of the offense of mail fraud because:

1. He did not devise or intend to devise a scheme to obtain money by false and fraudulent pretenses and representations.

2. He believed in good faith that he was entitled to act in the manner he did because he was personally responsible and liable to the Illinois Department of Conservation, as their agent, and not as County Clerk, in the sale,

---

Count One ¶ 3(a) was supplanted by a reference to "approximately $33,440.07 in interest earned on monies collected by him, in his capacity as County Clerk, from the sale of licenses to his agents." Each of Counts Eight through Fifteen incorporated Count Seven ¶ 3 by reference.

4. Because only the instructions bearing on the current question are quoted in this opinion, the following text recital may give a somewhat distorted picture of the totality of what the jury heard from this Court, then carried back to the jury room in typewritten form to aid in its deliberations. What the following paragraphs in the text provide is the actual sequence in which the quoted instructions were delivered to the jury, but other intervening instructions have been omitted.

collection and remittance of monies for hunting, fishing and trapping licenses pursuant to the Department's policies and practices.

### Gill's Present Contentions

Gill's counsel has stated his position inaccurately. As Gill Mem. 1–2 put it:

Defendant further asserts that pursuant to the decision of the United States Supreme Court in *McNally v. U.S.,* [—— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292] 41 CRL. 2269, Sup.Ct. No. 86–234 decided June 24, 1987, defendant seeks a "determination that the judgment was imposed in violation of the Constitution ... of the United States."

To that end counsel urged (*id.* at 2) Gill "was convicted and is in custody upon a law that is unconstitutional in violation of Rule [sic] 2255...."[5]

But *McNally* was a statutory construction case, not a constitutional one. What the Supreme Court decided (107 S.Ct. at 2879–82) was that Congress had not *intended* to embrace pure "intangible rights" schemes within Section 1341's coverage. Instead the Court said (*id.* at 2879):

Insofar as the sparse legislative history reveals anything, it indicates that the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property.

Nor was that reading of Section 1341 in any way compelled by a stated desire on the Court's part to save the statute from unconstitutionality if the government-urged construction were adopted. Thus it is clearly open to Congress to overrule *McNally* legislatively—that is, to amend Section 1341 to sweep up intangible rights schemes if Congress wishes to do so.

Section 2255, however, is not by its terms limited to *unconstitutional* convictions. If read in broadly literal terms, it could arguably encompass everything (or nearly everything) that could be the subject of a

direct appeal. Understandably the Supreme Court has not read it that way, for that would blur—or wipe out entirely—the distinction between direct and collateral attacks on criminal convictions.

Thus *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) discussed the Court's prior decisions (including *United States v. Addonizio,* 442 U.S. 178, 184–85, 99 S.Ct. 2235, 2239–40, 60 L.Ed.2d 805 (1979)) and concluded (456 U.S. at 166–68, 102 S.Ct. at 1593–95) (footnote and subsection heading omitted):

In sum, the lower court's use of the "plain error" standard to review Frady's § 2255 motion was contrary to long-established law from which we find no reason to depart. We reaffirm the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.

We believe the proper standard for review of Frady's motion is the "cause and actual prejudice" standard enunciated in *Davis v. United States,* 411 U.S. 233 [93 S.Ct. 1577, 36 L.Ed.2d 216] (1973), and later confirmed and extended in *Francis v. Henderson,* 425 U.S. 536 [96 S.Ct. 1708, 48 L.Ed.2d 149] (1976), and *Wainwright v. Sykes,* 433 U.S. 72 [97 S.Ct. 2497, 53 L.Ed.2d 594] (1977). Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

Though Gill did not frame his motion in those terms initially, the parties have since addressed the issues that way, and this opinion will do the same.

### "Cause" and "Prejudice"

Gill has problems on both branches of the cause-and-prejudice inquiry. Because there may perhaps be room for argument

---

**5.** Nor was that position limited to Gill's two-page opening memorandum. Even after the government had filed its thoughtful responsive memorandum analyzing *McNally* and its impact

(or lack of impact) on Gill's conviction, Gill's reply memorandum persisted in speaking of *McNally* as involving "the constitutionality of Section 1341" (R.Mem. 2, 5, 8, 9).

on the first of those, this opinion will address both.

■ In terms of "cause," Gill did not appeal his conviction on the present ground or any other. Having elected not to travel the route of direct appeal, he must rely on the idea that at the time of his conviction three years ago the idea that there could not be an intangible-rights fraud prosecution under Section 1341 was a "claim ... so novel that its legal basis [was] not reasonably available to counsel ..." (*Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984)). For that purpose *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) teaches "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." No claim can be said to be "unavailable" in that sense where that claim had previously been made in the lower courts (*id.* 106 S.Ct. at 2667–68).

Without question the courts' acceptance of the intangible-rights theory of mail fraud (a development authored by creative prosecutors in this very District) did not take place without strenuous opposition from defense lawyers. In the doctrine's birthplace (the Seventh Circuit) defense counsel opposed it from the outset (see, e.g., *United States v. Isaacs*, 493 F.2d 1124, 1149–50 (7th Cir.) (per curiam), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974)). Nor did resistance to the concept end there—as the doctrine spread to other jurisdictions, it did so over the vigorous objections of defendants' lawyers (so that, applying to Gill's situation the phrase Justice O'Connor used in *Smith*,

106 S.Ct. at 2667, "the claim he now advances had been percolating in the lower courts for years at the time of his original [conviction]"). It is nonetheless true that by the time *McNally* found its way to the Supreme Court, perhaps half the Courts of Appeal had upheld and applied the doctrine (see the cases listed in Justice Stevens' dissent in *McNally*, 107 S.Ct. at 2883 n. 1).

Alternative conclusions suggest themselves from that state of facts. Because Gill would have been a sure loser before our Court of Appeals had he sought to appeal on the basis that a deprivation of intangible rights could not ground a mail fraud conviction,[6] and because he would then have had to hope for the long shot of obtaining review from the Supreme Court, he urges he had good cause for not making the effort. On the other hand, *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982) (footnote omitted) has said in the related 28 U.S.C. § 2254 context:

> We note at the outset that the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

And that should apply a fortiori to Section 2255, where by definition an unfriendly Court of Appeals does not have the final word on statutory construction—let alone constitutional—grounds.[7]

6. See, e.g., *United States v. Holzer*, 816 F.2d 304, 310 (7th Cir.1987), "vacated and ... remanded ... for further consideration in light of *McNally* ...," — U.S. ——, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987). *Holzer* mirrored the long-standing unwillingness of our Court of Appeals to reexamine the intangible rights concept.

7. After all, McNally and his codefendant Gray and their counsel were cautious enough (and courageous enough) to take the same argument on direct appeal to the Court of Appeals for the Sixth Circuit and then to the Supreme Court.

And it is worth noting that the argument was one that had been advanced in thoughtful terms four years *before* Gill's conviction in a law review comment, *The Intangible-Rights Doctrine and Political-Corruption Prosecutions Under the Federal Mail Fraud Statute*, 47 U.Chi.L.Rev. 562 (1980) (see *Holzer*, 816 F.2d at 310). Of course it costs student law review editors nothing to advance even outre legal theories, but under the circumstances Gill's counsel can scarcely label the contention he now advances as truly "novel" or "unavailable" (in the *Reed–Smith* sense) at the time of Gill's conviction.

On balance, it is more than difficult to characterize Gill as really having had "cause" for his admitted double procedural default in (1) failing to object to the "intangible rights" theory of prosecution before this Court and (2) failing to raise that objection on appeal. This Court thus determines that Gill fails on the first branch of the required showing, though there might perhaps be room for difference of opinion on that score.

■ In any event, however, Gill cannot prevail here because of the clear absence of demonstrated "prejudice." *McNally*'s teachings are still too new to be regarded as sharply marked out. What *is* plain, however, is that criminal mail fraud charges that do not deprive the victim or victims of property rights, but merely implicate "the intangible right of the citizenry to good government" (107 S.Ct. at 2879), are not sustainable under Section 1341. But even a moment's reflection demonstrates that *McNally* does not taint Gill's conviction—that Gill was not prejudiced by the insertion of the now-invalidated intangible rights concept into the indictment.

■ On all the evidence here, totally unlike the *McNally* situation, *everything* that demonstrated Gill's faithlessness to the precepts of good government consisted of his taking *property* belonging to the citizenry: its money.[8] There was no way in which the jury could have found that Gill schemed to deprive the people of "their right to [Gill's] honest, loyal and faithful service" without simultaneously having found he schemed to defraud Department, the State of Illinois and Winnebago County of more than $40,000 belonging to them (contrast *United States v. Wellman*, 830 F.2d 1453, 1462–64 (7th Cir.1987), which is parallel to Gill's scheme in that respect,

with *United States v. Gimbel*, 830 F.2d 621, 626–27 (7th Cir.1987), which is not).

In this case, then, the intangible rights of the citizenry were inextricably bound up with the property rights that *McNally* specifically reconfirms *are* the proper subject of Section 1341 prosecutions. This Court need not decide whether the view expressed in Justice Stevens' dissent, 107 S.Ct. at 2890 & n. 10 and since adopted in *United States v. Fagan*, 821 F.2d 1002, 1010–11 n. 6 (5th Cir.1987) is a fair application of the *McNally* majority opinion. Nor is this Court compelled to embrace the reading of *McNally* in *United States v. Runnels*, 833 F.2d 1183, 1186–1188 (6th Cir.1987), although that decision would clearly support the Gill conviction even in the direct-appeal context (let alone under collateral attack). After all, even under the most expansive reading of *McNally*, Gill cannot claim he was in any worse position under the indictment and jury instructions as given than he would have been with the intangible-rights language omitted.

That last comparison satisfies the classic test for harmless surplusage, as stated in *United States v. Miller*, 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985) (quoting from *Ford v. United States*, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1927)):

> A part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as "a useless averment" that "may be ignored." [9]

Or to put matters in the harmless-error mode, this is unquestionably a situation where "the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed" (*Rose v.*

---

8. · In a sense "intangible rights" is a somewhat misleading label, because it suggests that the other side of the coin should be described as "tangible rights." That is not really the case. Most frequently garden-variety fraud, involving what *McNally* accurately terms "property rights," deprives someone (as the fraud did in this case) of another kind of *intangible*—money.

9. [Footnote by this Court] See also *Runnels*, at 1188–1191, treating an erroneous instruction as surplusage under like circumstances (*id.* at 1191):

> [A] conviction based on an erroneous instruction may be affirmed if the jury necessarily found every factual predicate for a conviction under a proper theory.

*Clark,* —— U.S. ——, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986)).

### Conclusion

There may perhaps be previously convicted mail fraud defendants who can call on *McNally* to upset their convictions. Gill is not among them. This Court denies his Section 2255 motion.