UNITED STATES of America, Plaintiff,

v.

Kevin D. KEHOE, Robert M. Lang, and Robert Bailey, Defendants.

No. 85 CR 770, 85 CR 773, 85 CR 775 and 85 CR 776.

United States District Court,
N.D. Illinois, E.D.

Dec. 18, 1987.

Anton R. Valukas, U.S. Atty. by Chris Gair, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Martin S. Agran, Agran & Agran, Ltd., Chicago, Ill., for defendant Kehoe.

Robert Fisher, Frazin & Fisher, Chicago, Ill., for defendant Lang.

Michael D. Monico, Monico & Pavich, Chicago, Ill., for defendant Bailey.

paragraph of the text, it may become necessary        to address *Colorado River*).

**1110**

## ORDER

BUA, District Judge.

This case comes before the court on remand from the Seventh Circuit, 817 F.2d 440. The Court of Appeals has asked this court to reconsider defendants' mail fraud convictions in light of *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Based on *McNally*, defendants have moved to vacate their convictions and dismiss the charges against them. For the reasons stated herein, this court denies defendants' motion and upholds their convictions.

## FACTS

The indictment in this case arises from a scheme involving Manning Savings and Loan Association (Manning), a Chicago-based financial institution that is now defunct. As a recipient of deposit insurance from the Federal Savings and Loan Insurance Corporation (FSLIC), Manning was required to maintain a certain minimum net worth pursuant to Federal Home Loan Bank Board (FHLBB) regulations. *See* 12 C.F.R. 563.13 (1987). On November 12, 1981, the FSLIC and the FHLBB found that Manning had failed to meet its net worth requirements. In a recommended order dated July 14, 1982, an administrative law judge (ALJ) concurred in the finding that Manning's net worth was inadequate. The ALJ declared that unless Manning satisfied its net worth requirements within the statutorily mandated 20-day period, the FHLBB would immediately order Manning to merge or consolidate with another institution.

Harold Ticktin, Manning's president, sought to avoid a compelled merger. To that end, Ticktin devised a complex scheme to deceive the federal banking bureaucracy. As part of this scheme, Manning approved loan applications for the purchase of nearly 200 condominiums without requiring the loan applicants to make any down payments. Manning then made separate loans to other individuals, who kicked back part of the loan proceeds. Certain officers of Manning applied these kickbacks to the condominium loans, producing the false impression that down payments were being made. This scheme fostered the illusion that Manning's net worth had risen to a level that complied with federal regulations.

The three defendants who filed the motion now under consideration all participated in Manning's fraudulent loan scheme. As an employee of Elliott Financial Services, Kevin Kehoe helped arrange the sham loan transactions by recruiting applicants for the condominium loans. These applicants used the loan proceeds to purchase 71 condominiums in Orland Park, Illinois and 123 condominiums in Forest Park, Illinois. For each condominium, Kehoe received a $15,000 commission from Manning. In a transaction completely unrelated to the condominiums, Robert Lang and Robert Bailey received loans from Manning with the understanding that they were to kick back part of the loan proceeds. These kickbacks created the appearance that Manning was collecting down payments on the condominium loans.

Federal officials eventually discovered the Manning scheme. On December 4, 1985, a grand jury indicted seven people in connection with the scheme. The indictment charged Kehoe, Lang, and Bailey with a single offense: violation of the mail fraud statute, 18 U.S.C. § 1341 (1982). According to the indictment, these defendants deprived the FSLIC, the FHLBB, and Manning's depositors and shareholders of "their right to have the affairs of Manning ... conducted honestly, fairly, and free from craft, trickery, deceit, corruption, dishonesty and fraud."

A jury convicted Kehoe, Lang, and Bailey of mail fraud. While their appeals were pending in the Seventh Circuit, the U.S. Supreme Court ruled in *McNally v. United States, supra,* that deprivations of intangible rights fall outside the scope of the mail fraud statute. The *McNally* decision triggered a remand to this court for reconsideration of the three defendants' convictions. Arguing that this court cannot sustain their convictions after *McNally*, Kehoe, Lang, and Bailey have moved to va-

cate the judgments of guilty entered against them.

## DISCUSSION

In *McNally,* the Supreme Court held that Congress did not intend for the mail fraud statute to protect "the intangible right of the citizenry to good government." 107 S.Ct. at 2879. By restricting the scope of the statute to the protection of property rights, the *McNally* decision has sparked a re-examination of all mail fraud convictions stemming from alleged infringements of intangible rights. In the wake of *McNally,* some courts have overturned convictions founded on intangible rights theories, concluding that the underlying indictments failed to state an offense under the mail fraud statute. *See, e.g., United States v. Gimbel,* 830 F.2d 621 (7th Cir.1987); *United States v. Mandel,* 672 F.Supp. 864 (D.Md.1987).

Nonetheless, *McNally* does not require automatic reversal of a mail fraud conviction any time an indictment invokes some intangible rights doctrine. A number of courts have rejected *McNally* challenges to mail fraud convictions, even though the indictments at issue relied in part on an intangible rights theory. *See, e.g., United States v. Runnels,* 833 F.2d 1183 (6th Cir. 1987); *United States v. Wellman,* 830 F.2d 1453 (7th Cir.1987); *United States v. Keane,* No. 74 CR 359 (N.D.Ill.Dec. 7, 1987) [Available on WESTLAW, 1987 WL 27437]. *United States v. Gill,* 673 F.Supp. 275 (N.D.Ill.1987) (originally filed in the Western Division of the Northern District of Illinois). These courts relied on two factors in rebuffing defendants' *McNally* claims. First, in addition to advancing an intangible rights theory, each of the challenged indictments contained allegations of property deprivation—an offense that remains punishable under the mail fraud statute, even after *McNally.* Second, the inextricable connection in these cases between the property-based allegations and the intangible rights theories insured that the defendants received a full and fair trial for an offense encompassed by the mail fraud statute.

These same factors characterize the case at bar, the latest of *McNally*'s offspring. Obviously, the convictions of Kehoe, Lang, and Bailey cannot stand unless the case against these defendants "is plainly within the [mail fraud] statute." *Fasulo v. United States,* 272 U.S. 620, 629, 47 S.Ct. 200, 202, 71 L.Ed. 443 (1926). The three defendants contend that they were convicted of an offense that falls outside the scope of the statute: an alleged violation of the intangible right to honest business administration. Upon closer scrutiny, however, this case essentially involves the unauthorized taking of property—a cognizable offense under the mail fraud statute.

■ As the defendants correctly point out, the indictment's phrasing of the charges suggests that the case against Kehoe, Lang, and Bailey involves purely intangible rights. According to the indictment, the defendants sought to defraud the depositors and shareholders of Manning, as well as the FSLIC and the FHLBB, of "their right to have the affairs of Manning ... conducted honestly, fairly, and free from craft, trickery, deceit, corruption, dishonesty and fraud." Standing alone, this intangible right to honest business management cannot provide a proper basis for a mail fraud conviction after *McNally.*

In assessing the defendants' *McNally* claim, however, this court must look beyond the superficial charging language "to the substantive allegations of the indictment ... to determine whether the conduct alleged ... constituted an offense." *Wellman,* 830 F.2d at 1462. Beneath its veneer of intangible rights rhetoric, the indictment alleges a course of conduct that entails the infringement of property rights. According to the indictment, each of the three defendants obtained money as a result of the alleged fraud. Kehoe received substantial commissions for arranging the condominium loans. Lang and Bailey took loans from Manning in order to execute the kickback scheme. Through their participation in the alleged scheme, all three defendants helped to bilk Manning of a substantial portion of its assets, which right-

fully belonged to the institution's depositors and shareholders.

■ If they performed the acts alleged in the indictment, Kehoe, Lang, and Bailey committed a crime within the province of the mail fraud statute—obtaining money through false pretenses. The indictment's failure to frame the charges in terms of property deprivation does not undermine the validity of the defendants' convictions. As the Seventh Circuit recently admonished when it rejected a *McNally* claim, "The legal characterization the indictment places on the scheme should not obscure the fact that the specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute." *Id.* at 1463.

■ Nonetheless, because the indictment did not explicitly charge them with violating property rights, the defendants claim that the government deprived them of fair notice and an adequate opportunity to prepare a defense. They assert that they would have presented a different defense if they had known that their guilt or innocence hinged on the issue of property deprivation. While appreciating the serious due process implications of the defendants' argument, this court finds their claim both disingenuous and unpersuasive.

Despite its failure to articulate an explicitly property-based charge, the indictment clearly disclosed that the charges against the defendants arose entirely from conduct that violated the property rights of Manning's depositors and shareholders. This information provided the defendants with sufficient notice of the offense for which they were ultimately convicted. After reviewing the indictment, Kehoe, Lang, and Bailey surely must have known that the government could not obtain their convictions without proving that they improperly appropriated Manning's money. Furthermore, the defendants offer no evidence that a more explicit charge of property deprivation would have altered their trial strategy. In fact, revision of the indictment would not have changed the strategic dynamics of the trial. Whether or not the indictment included a property-based charge, it remained the government's burden to prove allegations that the defendants defrauded Manning's depositors and shareholders of their money. Thus, the defendants cannot demonstrate that the form of the indictment compromised their due process rights.

While the indictment established the proper groundwork for the defendants' mail fraud convictions, the jury instructions insured that those convictions would not stray outside the boundaries of the mail fraud statute. The instructions emphasized the integral role of property in the jury's deliberations. For instance, the instructions defined "scheme," a prerequisite for conviction, as "some plan or course of action intended ... to deprive another of something of value ..." In defining "intent to defraud," an element of the charged offense, the instructions depicted the purpose of the typical mail fraud scheme as "either causing some financial loss to another, or bringing about some financial gain to oneself or another." By casting the case in terms of property rights, the jury instructions conformed with the mail fraud statute as interpreted by *McNally*.

The defendants question the adequacy of the instructions. They contend that the jury could have construed "something of value" to include the right to honest business management. Consequently, the jury could have based the verdicts against Kehoe, Lang, and Bailey exclusively on an intangible rights theory. Even assuming the truth of this argument, this court sees no reason to upset the defendants' convictions. In several cases where the courts have rejected *McNally* claims, the prosecution's intangible rights theory rested entirely on alleged violations of property rights. The juries in these cases could only have convicted defendants under the intangible rights doctrine by finding that defendants infringed property rights. For this reason, the courts upheld defendants' convictions under the mail fraud statute. *See Runnels, supra; Wellman, supra; Gill, supra.* The same scenario prevails in the case at bar. As a necessary consequence of convicting Kehoe, Lang, and Bailey, the jury found that the three de-

fendants had engaged in a scheme to defraud Manning's depositors and shareholders of their money. The defendants' convictions thus fall within the purview of the mail fraud statute.

## CONCLUSION

For the foregoing reasons, this court denies defendants' motion and upholds their mail fraud convictions.

IT IS SO ORDERED.